Ruffin B. Cordell (Admitted *Pro Hac Vice* / cordell@fr.com)
Timothy W. Riffe (Admitted *Pro Hac Vice* / riffe@fr.com)
Adam R. Shartzer (Admitted *Pro Hac Vice* / shartzer@fr.com)
R. Andrew Schwentker (Admitted Pro Hac Vice / schwentker@fr.com)
Brian J. Livedalen (Admitted *Pro Hac Vice* / livedalen@fr.com)
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, DC 20024
Tel: (202)-783-5070
Fax: (202) 783-2331

*Additional counsel listed on signature page*

Attorneys for Defendant
MICRON TECHNOLOGY, INC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MLC INTELLECTUAL PROPERTY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC.,<br><br>Defendant. | Case No. 3:14-cv-03657-SI<br><br>**MICRON TECHNOLOGY, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS (Dkt. No. 215)**<br><br>Date: November 15, 2018<br>Time: 1:00 p.m.<br>Courtroom: 1, 17th Floor<br>Judge:  Honorable Susan Illston |

# TABLE OF CONTENTS

I.     STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

II.    RELEVANT FACTUAL BACKGROUND................................................................. 2

III.   ARGUMENT ............................................................................................................. 3

     A.    MLC's Motion Violates the Local Rules and Should be Denied
          on That Basis Alone........................................................................................ 3

     B.    MLC's Motion to Compel Discovery Should Be Denied Because
          It Seeks Irrelevant Information Not Proportional to the Needs of
          This Case........................................................................................................ 4

          1.    MLC Is Not Entitled to Further Discovery of Unaccused
               Products ................................................................................................. 5

          2.    MLC Is Not Entitled to Discovery of Sales Made by Non-
               Parties Such as MTI's Subsidiaries or Affiliates ................................. 9

          3.    Further Discovery Is Unwarranted Because MLC Already
               Received All Relevant Sales Information......................................... 14

     C.    MLC Is Not Entitled to Sanctions Under the Facts of This Case ................. 20

IV.    CONCLUSION......................................................................................................... 23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A. Stucki Co. v. Worthington Indus., Inc.*,
   849 F.2d 593 (Fed. Cir. 1988).........................................................................12

*Brown v. Duchesne*,
   60 U.S. (19 How.) 183 (1856) .........................................................................20

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015)...................................................................15, 16

*Creative Sci. Sys., Inc. v. Forex Capital Markets, LLC*,
   Civ. No. 5:04-3746 JF, 2006 WL 305963 (N.D. Cal. Feb. 8, 2006) ...........................4

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ..........................................................................13

*Effects Assocs., Inc. v. Cohen*,
   817 F.2d 72 (9th Cir. 1987) ............................................................................10

*Fed. Trade Comm'n v. DirecTV, Inc.*,
   Civ. No. 15-01129 HSG, 2015 WL 8302932 (N.D. Cal. Dec. 9, 2015)......................11, 12

*Fed. Trade Comm'n v. DirecTV, Inc.*,
   Civ. No. 15-01129 HSG, 2016 WL 7386133 (N.D. Cal. Dec. 21, 2016).....................9, 22

*FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*,
   Civ. No. 15-1879 BEN, 2016 WL 6522808 (S.D. Cal. Nov. 3, 2016) ..........................17

*Gilead Scis., Inc. v. Merck & Co, Inc.*,
   Civ. No. 13-04057 BLF, 2016 WL 146574 (N.D. Cal. Jan. 13, 2016).................11, 12, 16

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
   Civ. No. 12-03844 JST, 2014 WL 4593338 (N.D. Cal. Sept. 15, 2014) ................6, 9, 21

*Kelora Sys., LLC v. Target Corp.*,
   Civ. No. 11-01548 CW, 2011 WL 5444419 (N.D. Cal. Nov. 9, 2011) .....................6, 7, 8

*L. Tarango Trucking v. Cty. of Contra Costa*,
   202 F.R.D. 614 (N.D. Cal. 2001).......................................................................22

*Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*,
   964 F. Supp. 2d 653 (E.D. Tex. 2013) ..................................................................20

*Martinez v. City of Pittsburg*,
   Civ. No. 11-01017 SBA, 2012 WL 699462 (N.D. Cal. Mar. 1, 2012) ......................3, 20

i

*Mediatek, Inc. v. Freescale Semiconductor, Inc.*,
   Civ. No. 11-5341 YGR, 2013 WL 588760 (N.D. Cal. Feb. 13, 2013) ...............................6, 8

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005) .....................................................................................16, 23

*Micro Motion, Inc. v. Kane Steel Co.*,
   894 F.2d 1318 (Fed. Cir. 1990) .....................................................................................10, 15

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007) ..............................................................................................................20

*Network Appliance, Inc. v. Bluearc Corp.*,
   Civ. No. 03-5665 MHP, 2005 WL 1513099 (N.D. Cal. June 27, 2005) ...................21, 22, 23

*Oracle Am., Inc. v. Google Inc.*,
   Civ. No. 10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)...........................6, 7

*Padgett v. City of Monte Sereno*,
   No. 04-CV-3946 JW(RS), 2006 WL 1141265, (N.D. Cal. May 1, 2006) ................................3

*Perfect 10, Inc. v. Yandex N.V.*,
   Civ. No. 12-01521 WHA, 2012 WL 2119257 (N.D. Cal. June 11, 2012) .............................14

*Phoenix Techs. Ltd. v. Vmware, Inc.*,
   Civ. No. 15-01414 HSG, 2016 WL 5725044 (N.D. Cal. Sept. 30, 2016) .............................12

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*,
   Civ. No. 16-300 CJC, 2017 WL 3275615 (C.D. Cal. Feb. 14, 2017)....................................17

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013)..................................................................................... *passim*

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   Civ. No. 04-1371 LPS, 2018 WL 4804685 (D. Del. Oct. 4, 2018) .......................................19

*Rakhra v. Emmino*,
   Civ. No. 95-20125 EAI, 1995 WL 456341 (N.D. Cal. July 24, 1995) .............................13, 14

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) (*en banc*) .............................................................................18

*Specialized Bicycle Components, Inc. v. Barton*,
   Civ. No. 10-05725 HRL, 2011 WL 1599653 (N.D. Cal. Apr. 28, 2011) .........................10, 16

*Synapsis, LLC v. Evergreen Data Sys., Inc.*,
   No. C 05-1524 JF, 2006 WL 2884413 (N.D. Cal. Oct. 10, 2006)............................................3

*Tegal Corp. v. Tokyo Electron Co.*,
   248 F.3d 1376 (Fed. Cir. 2001)..............................................................................................13

*U.S. ex rel. Barajas v. Northrop Corp.*,
   26 F.3d 135 (9th Cir. 1994) ........................................................21

*Walsh v. Kindred Healthcare*,
   798 F. Supp. 2d 1073 (N.D. Cal. 2011) ........................................13

*Wechsler v. Macke Int'l Trade, Inc.*,
   486 F.3d 1286 (Fed. Cir. 2007)...................................................13

*WesternGeco LLC v. ION Geophysical Corp.*,
   138 S. Ct. 2129 (2018)..............................................16, 17, 18, 19

**Statutes**

28 U.S.C. § 1292(b) ...................................................................19

35 U.S.C. § 271(a) ................................................................ *passim*

35 U.S.C. §§ 271(b) ..........................................................10, 17

35 U.S.C. § 271(f) ..............................................................18, 19

**Other Authorities**

Civ. L.R. 3–1...........................................................................6, 7, 9

Civ. L.R. 3–4...........................................................................6, 8

Civ. L.R. 7–8...........................................................................3

Civ. L.R. 37–2.........................................................................4

FED. R. CIV. P. 26 ............................................................. *passim*

FED. R. CIV. P. 37 ...................................................4, 20, 21, 22

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Civ. L.R. 7–3 and 7–4, Defendant Micron Technology, Inc. ("MTI") hereby submits its opposition to Plaintiff MLC Intellectual Property, LLC's ("MLC") Motion for Sanctions dated October 23, 2018 ("Motion" or "Mot.") (Dkt. No. 215).

As an initial matter, MLC improperly filed its motion for sanctions in contravention of the Local Rules.  On this basis alone, the motion can be denied.  As to the substance, for reasons explained below, MLC's motion is meritless.  MTI produced all of its revenue data for all U.S. sales of the accused products in the spreadsheet over which MLC complains.  This production, alone, satisfies the Court's August 20 Order.  Moreover, MTI went above and beyond the Court's order, producing revenue information relevant to *manufacture* of the accused products in the U.S. by MTI and *importations* into the U.S. of the accused products by MTI – neither of which were ordered by the Court or requested by MLC.  MLC's motion for sanctions improperly seeks to stretch the lone infringement claim at issue in this case: a single claim of direct infringement under 35 U.S.C. § 271(a) by MTI alone (and not MTI's subsidiaries/affiliates).

Section 271(a), by its plain language, limits MLC's claims to those of infringement for activities occurring in the United States by the named defendant.  Seeking to improperly inflate its potential damages claim, MLC demands discovery into the sales activities of entities that are not parties to this case (*e.g.*, MTI's subsidiaries/affiliates) for products that are not accused in this case (*i.e.*, products that were not accused in MLC's infringement contentions) for activities that occur outside of the United States.  When MTI properly declined to search for, collect, and produce financial information that is irrelevant to MLC's infringement claim, MLC disregarded the Court's procedures for resolving discovery disputes and filed this motion for sanctions, which would allow MLC to base a damages claim on information included in 10-K filings submitted by MTI regarding (1) products that have never been accused of infringement and for which no infringement contentions have ever been provided; (2) sales made by entities that are not parties to this lawsuit; and (3) sales of products manufactured outside the United States by entities located outside the United States and shipped to customers outside the United States.  This result would directly

1

violate the Patent Act and years of case law prescribing the scope of potential reasonable royalty damages.  MLC should not be allowed to use the Court, or a combined discovery/sanctions motion, to vastly expand its only claim in this case for patent infringement under § 271(a), limited to MTI, and limited to specific accused products.  The law of this District precludes MLC from seeking discovery into parties that it did not sue and for products it does not accuse of infringement.

In light of the above, this Court should deny MLC's request for an order compelling discovery into: (1) products that MLC has never accused of infringement, (2) entities (MTI subsidiaries/affiliates) that MLC has never accused of infringement, and (3) extraterritorial product sales.  The Court should also find that monetary or evidentiary sanctions are not warranted against MTI for properly seeking to limit discovery in accordance with FED. R. CIV. P. 26 to matters that are relevant to MLC's claim and proportional to the needs of the case.

## II.      RELEVANT FACTUAL BACKGROUND

On August 12, 2014, MLC filed a complaint against MTI.  (Dkt. No. 1 ("Complaint").)  In the four years that followed, MLC has not sought to name other defendants to this litigation, and it has not amended either its complaint for infringement against MTI or its infringement contentions, which MLC served on December 5, 2014 ("Contentions"), and which name specific accused products.  (*See* **Exhibit A** (Contentions excerpt).)

In July 2018, a discovery dispute arose relating to a date for production of MTI's sales information for the accused products in this case.  (*See* Dkt. No. 192.)  On August 20, 2018, the Court issued an Order re: Discovery ("Order"), which directed MTI to provide:

> documents (such as spreadsheets) showing sales, revenue, cost and profits for [MTI's] multi-level cell and triple-level cell NAND flash products sold between August 12, 2008 and June 9, 2015, including products sold in that period corresponding to Micron Design IDs 152a, 163b, 172a, 173a, 174a, 183a, 184a, 184c, 185a, 185c, 195b, b75a, and n85a.

(Dkt. No. 193 at 2.)  MTI timely complied with the Court's Order.  Even MLC admits that, pursuant to the Order, MTI produced a spreadsheet identifying sales information for its accused products during the specified time period, broken out by manufacturing part number ("MPN").  (*See* Mot. Ex. A at 1–2, discussing MICRONM047490.)

MTI produced this spreadsheet on September 25, 2018.  On October 3, 2018, counsel for

2

MLC sent a letter identifying what it viewed as "serious deficiencies" in the spreadsheet in light of publicly available information provided in one of MTI's SEC regulatory filings—specifically, a 10–K form dated August 2014.  (*See* Mot. Ex. A at 4.)  On October 12, 2018, MTI responded and addressed the concerns raised by MLC.  (Mot. Ex. B.)  MTI clarified that there were no deficiencies in the spreadsheet it produced by explaining that the 2014 10-K filing included sales of unaccused products, made by unaccused entities legally separate from defendant MTI, and included worldwide sales information not relevant to a Section 271(a) infringement claim—the only claim of infringement in this case.  (*E.g.*, *id.* at 2.)  Rather—consistent with the Federal Rules and the Court's Order—MTI's spreadsheet contained financial data relevant to MLC's infringement claim.  (*See id.* at 1–2.)

MLC then filed the instant Motion, which not only violates the Local Rules, but is deficient for additional reasons set forth below.

## III.    ARGUMENT

### A.    MLC's Motion Violates the Local Rules and Should be Denied on That Basis Alone

MLC's Motion seeks an order compelling discovery from MTI and awarding monetary sanctions to MLC, and—should MTI not satisfy MLC's demands—to impose evidentiary sanctions on MTI.  (Mot. 1.)  So styled, MLC's Motion flouts the requirements of this District's Local Rules, because, "in this District, all motions for sanctions ***must*** be filed as separately noticed motions, not as a part of a motion to compel."  *Martinez v. City of Pittsburg*, Civ. No. 11-01017 SBA, 2012 WL 699462, at *4 (N.D. Cal. Mar. 1, 2012) (citing Civ. L.R. 7–8) (emphasis added). Thus, MLC's Motion is procedurally defective, and its request for sanctions should be denied on those grounds alone.  *See id.* ("Mr. Martinez did not [file a separately noticed motion for sanctions], and his motion for sanctions fails for this reason."); *accord Synapsis, LLC v. Evergreen Data Sys., Inc.*, Civ. No. 05-1524 JF, 2006 WL 2884413, at *1 (N.D. Cal. Oct. 10, 2006) (denying sanctions request in part "because the sanctions request did not comply with Civil Local Rule 7–8, which requires all sanctions requests to be brought by separately-noticed motion."); *Padgett v. City of Monte Sereno*, Civ. No. 04-3946 JW(RS), 2006 WL 1141265, at *1 (N.D. Cal. May 1, 2006)

(same); *Creative Sci. Sys., Inc. v. Forex Capital Markets, LLC*, Civ. No. 5:04-3746 JF, 2006 WL 305963, at *1 (N.D. Cal. Feb. 8, 2006) (same).

To the extent it seeks supplementation of responses to its discovery requests (*e.g.*, Mot. 13), MLC's Motion is also procedurally defective under Civ. L.R. 37–2. Rule 37–2 requires that:

> a motion to compel further responses to discovery requests must set forth each request in full, followed immediately by the objections and/or responses thereto. For each such request, the moving papers must detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied.

MLC's motion, at a minimum (1) fails to provide the full requests, (2) fails to provide the objections/responses thereto, and (3) fails to detail the basis for how the requirements of Rule 26(b)(2) are satisfied. MLC's motion flouts Local Rule 37–2 and may be denied.

MLC also fails to demonstrate entitlement to monetary sanctions in the manner required by the Local Rules. Civ. L. R. 37–4(b)(3) dictates that a party moving for an award of costs or expenses provide a declaration "itemiz[ing] with particularity the otherwise unnecessary expenses . . . directly caused by the alleged violation or breach, and set[ting] forth an appropriate justification for any attorney-fee hourly rate claimed." MLC fails to make any showing on this point.

Regardless, for reasons explained below, MLC is not entitled to any form of requested relief.

### B. MLC's Motion to Compel Discovery Should Be Denied Because It Seeks Irrelevant Information Not Proportional to the Needs of This Case

In its Motion, MLC apparently seeks to compel disclosure of information under FED. R. CIV. P. 37, although MLC does not specify what subpart of that Rule entitles MLC to relief on this part of its Motion. In fact, MLC is not entitled to any relief under Rule 37, because MTI has already complied with its discovery obligations in this case by producing relevant and responsive information in response to this Court's Order (Dkt. No. 193) and during this case's discovery period.

Rather, it is MLC's sweeping reach for discovery that lacks any relevance to the claims that MLC pursues in this litigation. FED. R. CIV. P. 26(b)(1) provides that a party:

> may obtain discovery regarding any nonprivileged matter that is ***relevant to any party's claim or defense and proportional to the needs of the case***, considering the

4

> importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1) (emphasis added.)  Yet MLC asks for information relating to (1) products MLC has not accused; (2) entities MLC has not sued; and (3) sales outside the United States, which are irrelevant to MLC's infringement and damages claims according to an abundance of long-standing precedent.  MLC's errant demands are addressed in turn below.

In a nutshell, MLC demands information that is neither relevant to its claims or Micron's defenses, nor proportional to the needs of this case.  This is particularly true in light of the relevant information that MTI already provided to MLC.  MLC's requests therefore may, and should be, denied.

### 1.     MLC Is Not Entitled to Further Discovery of Unaccused Products

#### a.     MTI Already Produced All Relevant Sales Information

As explained in the accompanying Declaration of Roger Kearsley ("Kearsley Declaration"), MTI has produced sales information for ***all*** products that relate to the specific products MLC has chosen to accuse ("Covered Products") and which MTI makes, sells, or imports. (*See* Kearsley Declaration ¶¶ 15–21.)  MTI has already gone above and beyond the requirements of the Patent Local Rules (as explained in Section III(B)(1)(b) below) by voluntarily producing discovery which does not relate to accused products and MLC would not even be entitled to obtain. Even MLC acknowledges that the sales information already produced by MTI encompasses hundreds of products—products that MLC has not even chosen to accuse in this action.  (*See* Mot. 8–9.)  But MLC is wrong that MTI has "admitted it omitted" any sales.  (*See id.* 8.)  Quite the contrary.  As the Kearsley Declaration makes clear, MTI has provided sales information for these products—and the sales spreadsheet produced by MTI shows that MTI ***has made no relevant sales*** of certain products.  MTI already explained this point to MLC.  (Mot. Ex. B at 1–2.)

#### b.     MLC Is Not Entitled to Discovery of Broad Product Categories

MLC wrongly asserts that it is entitled to obtain sales or financial information for models of a broad, amorphous class of "NAND Flash" products that MLC did not choose to accuse of

5

infringement.  (Mot. 8–10.)  As this is a patent case, MLC is obligated under the Patent Local Rules to list each accused product "as specific[ally] as possible."  (Pat. L.R. 3–1(b).)  Courts in this District interpret Patent Rule 3–1(b) stringently to "require[ ] *specific* identification of particular accused products."  *Oracle Am., Inc. v. Google Inc.*, Civ. No. 10-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) (emphasis in original) (granting motion to strike infringement theories for accused products identified for the first time in expert report); *see also Mediatek, Inc. v. Freescale Semiconductor, Inc.*, Civ. No. 11-5341 YGR, 2013 WL 588760, at *1 (N.D. Cal. Feb. 13, 2013) (denying motion to compel discovery on products not identified in contentions) ("The overriding principle of the Patent Local Rules is that they are designed to make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." (internal edit omitted)).  Thus, MLC's identification of 174 accused products in its Contentions does not go "above and beyond" what the Rules dictate, as MLC suggests.  (Mot. 9.)  Quite the contrary:  the plain text of Patent Rule 3–1(b) *requires* patentees such as MLC to list in their infringement contentions *as specifically as possible* the particular products that are accused of infringement.[1]  And MLC's Contentions in this case show that MLC can identify accused product models most specifically by their manufacturer part number ("MPN").  Having identified specific MPNs for 174 Micron products, MLC is not excused from doing so for any other products it intended to accuse.

MLC's failure to identify additional products with specificity precludes it from using discovery motions to obtain sales information for these products.  Such discovery is neither relevant to MLC's infringement claims (which are necessarily limited to the specifically-accused products identified in its infringement contentions) nor comports with the policy of the Patent Local Rules.  In this District, a defendant (here MTI) "should not have to guess as to which" products are encompassed in a plaintiff's infringement theories.  *Kelora Sys., LLC v. Target Corp.*, Civ. No. 11-01548 CW, 2011 WL 5444419, at *2 (N.D. Cal. Nov. 9, 2011); *see also Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, Civ. No. 12-03844 JST, 2014 WL 4593338, at *3

---

[1] Relatedly, Patent L.R. 3–4 requires only production of "[d]ocuments *sufficient to show* the sales, revenue, cost, and profits for *accused instrumentalities identified pursuant to Patent L.R. 3-1(b)* for any period of alleged infringement."  (Emphases added.)

(N.D. Cal. Sept. 15, 2014) ("[Defendant] should not have to conduct a review of its products going back several years and attempt to guess which of its products are similar enough that [plaintiff] intended to name them as well.") (denying motion to compel discovery on unaccused products). Accordingly, this Court should join others in the District and conclude that "the goal of LRP 3–1, which is to make discovery manageable, is best served by denying discovery for instrumentalities that were not accused in the preliminary infringement contentions." *Kelora*, 2011 WL 5444419, at \*2 (denying motion to compel discovery on products not listed in contentions).

Nor should MLC be permitted to make an end run around the requirements of the Patent Local Rules by describing the accused products as a broad class. MLC's demands for information relating to "NAND Flash" products, which MLC apparently believes are similar to the 174 products listed in its Contentions, are facially improper under the Rules. The Rules do "not tolerate broad categorical identifications" and do not "permit the use of mere representative examples." *Oracle Am.*, 2011 WL 4479305, at \*2. Rather, "a full list of accused products must be disclosed as part of a party's infringement contentions." *Id.* Furthermore, because the Rules "place[ ] the burden of specifically identifying all accused devices on the accuser," *id.*, it is unfair to require MTI to help MLC make its case. MTI is not both the plaintiff and defendant. The burden remains squarely with MLC to identify accused products ***with specificity*,** according the requirements of the Patent Local Rules governing infringement contentions. Thus, "[e]ven if it would have been easy for [MTI] to compile an accurate list of all the devices [MLC] considered to be [infringing], Rule 3–1(b) require[s] [MLC] to provide such a list in its disclosure of infringement contentions." *Id.* Furthermore, MLC's single cited case[2] (which is not from this District in any event) does not support MLC's position, because, in demanding financial information for "NAND Flash" products, MLC failed to identify any new accused Micron products either by name ***or*** number— only by category, which is not allowed under the Rules. And even if MLC had identified new accused products as part of negotiations regarding discovery, it was required to first move to seek permission from the Court to amend its infringement contentions to add those products. *See*

---

[2] Mot. 9 (citing *Fastvdo LLC v. AT&T Mobility LLC*, Civ. No. 16-385 WVG, 2016 WL 4542747, at \*4 (S.D. Cal. Aug. 31, 2016).

*Kelora*, 2011 WL 5444419, at *2 (plaintiff intending to pursue discovery on unaccused products should first seek to amend its infringement contentions).  MLC never moved.

To justify its demand for sweeping discovery, MLC claims that any differences in MTI's "NAND Flash" products are "not . . . material" to its theory of infringement.  (Mot. 9.)  But it is MLC's responsibility under the local rules of *this District* to investigate whether and how any particular Micron products allegedly infringe, and to identify relevant products in its Contentions. *E.g.*, *MediaTek*, 2013 WL 588760 at *3 (distinguishing Patent Local Rules from rules in other districts that permitted discovery on technical operation of products "reasonably similar to" accused products, because "[a] different standard applies in [N.D. California].").  The rationale urged by MLC is explicitly rejected by courts in this District, and the same law applies here.  Nor is there a basis to find otherwise in this particular case, because MLC sought and received ample discovery regarding MTI's accused products.  (*E.g.*, Micron Invalidity Contentions dated January 20, 2015, at 17 (identifying Patent L.R. 3–4 production of Micron product schematics at MICRONSC0000001–18982) (**Exhibit B**); MLC's Design Environment Inspections occurred on June 26, 2017 – June 30, 2017 and September 26, 2017 – September 27, 2017; MLC Interrogatory No. 10 dated August 17, 2017 (seeking information relating to Micron products corresponding to the same Design IDs listed in the Order) (**Exhibit C**).)  And, as MTI explained to MLC (Mot. Ex. B at 1), MTI produced documents over a year ago that connect specific product MPNs with the specific Design IDs listed in the Order.  (*See* MICRONM046299 (**Exhibit D**).)  Having extensive information relating to MTI's products long in its hands, MLC should not now be allowed to use discovery motions to circumvent this district's stringent rules for amending contentions.

Lastly, MLC attempts to justify its demands by interpreting the word "including" in the Court's August 2018 Order to mean that this Court ordered MTI to provide sales information on products not accused in MLC's Contentions.  (Mot. 9–10.)  But, as explained above, MLC's interpretation runs afoul of the Patent Local Rules and the requirement that accused products be identified as specifically as possible.  Rather, if true, MLC's interpretation would force MTI to "guess" what products MLC believes are infringing, and produce discovery related thereto.  In view of the plain language of the Rules and this District's interpretation thereof, MLC's

8

interpretation of the Order cannot be correct.  *See Icon-IP*, 2014 WL 4593338, at *4 (rejecting the plaintiff's argument that it was entitled to sales and revenue data for unaccused devices).

In light of the above, MTI respectfully asks this Court to deny MLC's demand for discovery into additional MTI products, as that demand seeks irrelevant information given MLC has not accused any new products of infringement via its Patent Rule 3–1 infringement contentions.

### 2.   MLC Is Not Entitled to Discovery of Sales Made by Non-Parties Such as MTI's Subsidiaries or Affiliates

MLC "only is entitled to discover information that is relevant to the parties' claims or defenses, and that is proportional to the needs of the case."  *Fed. Trade Comm'n v. DirecTV, Inc.*, Civ. No. 15-01129 HSG, 2016 WL 7386133, at *5 (N.D. Cal. Dec. 21, 2016) (citing FED. R. CIV. P. 26(b)(1)) ("*FTC I*").  MLC's demand for information relating to MTI's subsidiaries/affiliates exceeds the limits of discovery permitted by Rule 26(b)(1) for at least three reasons set forth below, and, consequently, should be denied.

### a.   Discovery from Non-Parties Is Not Relevant to MLC's Section 271(a) Claim or a Defense in This Case

To understand why MLC's claim for non-party subsidiaries' information should be denied under Rule 26(b)(1), one need look no further than the claims and defenses in this case.  Although MLC's Complaint does not identify the specific section of the Patent Act under which it asserts entitlement to relief (*see generally* Dkt. No. 1), MLC's infringement contentions limit its claims to infringement allegations under 35 U.S.C. § 271(a).  (Contentions § (I)(A).)  Moreover, MLC reiterates that it raises only a claim of direct infringement under Section 271(a) in the part of the Contentions that relates to indirect infringement claims.  (*Id.* § (I)(D).)

Under the facts here, any manufactures, uses, offers for sales, sales, and imports of a non-party are not relevant to MLC's Section 271(a) infringement claim.  In pertinent part, Section 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention . . . infringes the patent."  Here, MLC chose to sue only *Micron Technology, Inc.*—**MTI**—for allegedly committing infringement under Section 271(a).  Neither MLC's Complaint nor its Contentions refer to sales or other activities performed or made by MTI's subsidiaries/affiliates,

9

even though evidence of these subsidiaries' existence was publicly available to MLC well before it filed suit, as evidenced by MLC's reliance on 10-K documents filed with the SEC.  And, as clarified by its Contentions, MLC expressly limits its claims to those under Section 271(a) and not indirect infringement claims under 35 U.S.C. §§ 271(b) or 271(c) in this case, which may otherwise implicate the actions of third parties.  Nor still did MLC seek to add any Micron subsidiaries/affiliates into this litigation at any point, even assuming that MLC could meet its burden to establish the requirements for personal jurisdiction and venue for these entities.  As plaintiff, MLC dictated the claims at issue in this litigation by the allegations it chose to pursue. *Cf. Effects Assocs., Inc. v. Cohen*, 817 F.2d 72, 73 (9th Cir. 1987) ("[P]laintiff is master of his claim and . . . will have the choice of framing his action . . . .").  The issue, therefore—as framed by MLC—is whether ***MTI***, and ***not its subsidiaries/affiliates***, is liable for infringement.

Tellingly, the arguments in MLC's Motion focus on whether it ***could*** get sales-related information about MTI's subsidiaries/affiliates from MTI.  (*See* Mot. 17–19.)  Without conceding whether or not MLC could get this discovery if MLC was entitled to do so, that is not the question—the question is whether MLC ***should*** get this discovery.  The answer is no.  Despite recognizing that relevance to a claim or defense in the case is a necessary predicate to such discovery, MLC simply has not articulated why sales or other activities performed by non-parties with distinct corporate forms is relevant to MLC's infringement or damages claims against Micron Technology, Inc., the only entity from which MLC seeks relief.  For example, as explained below in Section III(2)(c), MLC has not offered a reason to believe that MTI would, should, or could be held liable for sales of its subsidiaries/affiliates.  "A litigant may not engage in merely speculative inquiries in the guise of relevant discovery."  *Cf. Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990) (finding district court abused its discretion by denying motion to quash plaintiff's "fishing expedition" subpoena seeking non-party's "sales volume of particular products and customer lists," which were allegedly relevant to damages); *Specialized Bicycle Components, Inc. v. Barton*, Civ. No. 10-05725 HRL, 2011 WL 1599653, at *2 (N.D. Cal. Apr. 28, 2011) (denying "fishing expedition" subpoena "in search of other potential defendants not related to this action").  Under the facts of this case, and absent the indispensable showing that MLC's requested

10

discovery is relevant to the Section 271(a) claim against MTI, MLC's demand for sweeping discovery into other entities' sales is no more than a fishing expedition, and should be precluded.

### b. Discovery of Non-Parties' Information Is Not Proportional to This Case's Needs

MLC's request for non-party discovery should also be denied because, for at least three reasons, the discovery MLC seeks is disproportionate to the needs of this case.

First, with the requirement of proportionality, "[n]o longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence." *Gilead Scis., Inc. v. Merck & Co, Inc.*, Civ. No. 13-04057 BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016). "[T]he old language to that effect is gone.  Instead, a party seeking discovery of relevant, non-privileged information must show, ***before anything else***, that the discovery sought is proportional to the needs of the case." *Id.* (emphasis added) (denying motion to compel).  MLC's Motion fails to address the proportionality requirement.  MLC does not explain, therefore, why non-parties' financial information is proportional to ***this*** case's needs, given that the only infringement claim is against MTI alone.

Second, the scope of permissible discovery from non-parties is narrower than that permitted from parties to the action.  *Fed. Trade Comm'n v. DirecTV, Inc.*, Civ. No. 15-01129 HSG, 2015 WL 8302932, at *4 (N.D. Cal. Dec. 9, 2015) ("*FTC II*") (granting protective order against third party subpoenas that were not proportional to the needs of the case) (citing *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649–50 (9th Cir. 1980)).  MLC's demands for discovery into the activities of MTI's subsidiaries/affiliates were not accompanied with a subpoena to those entities.  Nor has MLC added those subsidiaries/affiliates as defendants in this case. Rather, MLC's attempts to force discovery of MTI's subsidiaries/affiliates appears to be a blatant end-run around the discovery requirements that accompany discovery demands of foreign corporations, and should be denied.

Third, and most importantly, MLC already obtained the discovery it needs to make its damages case.  As explained in the Kearsley Declaration, MTI has already produced the actual financial data relevant to the accused products and MTI's activities. (*E.g.*, Kearsley Decl. ¶¶ 19–

11

21); *see also, e.g.*, *Gilead*, 2016 WL 146574, at *2 n.13 ("Merck's papers show that it already has the material it needs to challenge Seeger's credibility, and the further discovery it seeks would be cumulative and disproportionate . . ."); *cf. FTC II*, 2015 WL 8302932, at *4 (granting protective order in part because the "requested information appears to be, at least in part, already in [movants'] possession"); *Phoenix Techs. Ltd. v. Vmware, Inc.*, Civ. No. 15-01414 HSG, 2016 WL 5725044, at *1 (N.D. Cal. Sept. 30, 2016) (denying request for projected sales data over plaintiff's claim that projections were relevant for determining value of infringement, because defendant had produced actual, "non-speculative" sales data relevant to damages calculation for copyright infringement). A court "must limit the frequency or extent of discovery otherwise allowed . . . if "(i) the discovery sought is unreasonably cumulative or duplicative . . ." FED. R. CIV. P. 26(b)(2)(C). Discovery into sales of other Micron entities would—at best—be unreasonably cumulative of the information MLC already has about MTI's sales. Notably, the *Gilead* court denied Merck's motion to compel discovery into compounds that were similar to, but not the same as, the compound at issue in the case because there was no "specific information triggering some reason for doubt" that Gilead's representation that the requested discovery was not relevant to the compound at issue. *See* 2016 WL 146574, at *1–2. Likewise, MLC's Motion does not provide a reason to doubt MTI's representation that it has produced the financial information relevant to MLC's Section 271(a) infringement claim against MTI. With the relevant information already in MLC's hands, discovery into other Micron entities' sales is not proportional to the needs of this case, and should be precluded.

### c.   MLC Has Not Justified Piercing the Corporate Veil Here

MLC's demand for non-party information, viewed in the light most favorable to MLC, assumes that activities of any MTI subsidiary/affiliate would be relevant to MLC's instant claims against MTI. Thus, MLC's position appears to be predicated on the premise that MTI, the sole defendant in this case, would be liable for its subsidiaries' acts. But this assumption is unfounded here. A parent company such as MTI is liable for a subsidiary's infringement under 35 U.S.C. § 271(a) only when the evidence justifies disregarding the corporate structure and piercing the corporate veil (also known as the alter ego doctrine). *A. Stucki Co. v. Worthington Indus., Inc.*,

12

849 F.2d 593, 596 (Fed. Cir. 1988); *see also Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) ("In the absence of evidence showing that the parent company either was an alter ego of the subsidiary or controlled the conduct of the subsidiary, we refused to find direct infringement.").

Here, MLC offers no justification for piercing the corporate veil to hold MTI liable for subsidiary/affiliate activities, despite having the burden to do so. *Rakha v. Emmino*, Civ. No. 95-20125 EAI, 1995 WL 456341, at *3 (N.D. Cal. July 24, 1995) ("It is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity."). The bar to entitlement is a high one: California courts generally treat requests to pierce the corporate veil as a "drastic remedy" and "disregard the corporate form only reluctantly and cautiously." *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007) (applying Ninth Circuit and California law); *see also id.* ("Since the alter ego issue is not unique to patent law, we apply the law of the regional circuit."). Under California law, the corporate veil may be pierced only when: (1) "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and the corporation has ceased," and (2) "an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Id.* (internal edit omitted) (quoting *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988)); *accord Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011) ("To invoke the alter ego doctrine, Plaintiffs must allege: (1) that there is such a unity of interest and ownership that the separate personalities of the two corporations no longer exist; and (2) that if the acts are treated as those of only one of the corporations, an inequitable result will follow."). In applying this doctrine, a court should consider factors such as "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Walsh*, 798 F. Supp. 2d at 1082.

There is simply no evidence here to warrant piercing the corporate veil or to otherwise assume that MTI would be liable for any acts performed by its subsidiaries. *See Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) ("[R]eferences in the parent's annual report to

13

subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship."), *abrogated on other grounds*, *Williams v. Yamaha Motor Co. Ltd.,* 851 F.3d 1015, 1024 (9th Cir. 2017); *Perfect 10, Inc. v. Yandex N.V.*, Civ. No. 12-01521 WHA, 2012 WL 2119257, at *2 (N.D. Cal. June 11, 2012) ("Yandex N.V.'s corporate veil is not pierced simply because Yandex N.V. and its subsidiaries all engage in the search-engine business. . . . [T]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law."). MLC has not provided any evidentiary showing on this point and thus cannot prevail. *E.g.*, *Rakhra*, 1995 WL 456341, at *3. Nor is there any inequity here: MLC chose to sue MTI, not MTI's subsidiaries or affiliates, despite a wealth of public information demonstrating the latter's existence. Accordingly, MLC has not justified piercing the corporate veil between MTI and its subsidiaries.

### 3. Further Discovery Is Unwarranted Because MLC Already Received All Relevant Sales Information

As explained below, MLC's demand for "worldwide sales" information should be denied because MLC already has all the relevant information it needs to make its damages case against MTI, the only defendant in suit, and it has not shown that any other relevant information even exists. As explained below, the cases upon which MLC relies does not lead to a different result. And, to the extent MLC seeks information from other Micron entities, this request is improper at least for the reasons provided in Section III(B)(2).

To be clear, MTI is not withholding any relevant sales information relating to the products accused by MLC. (*See, e.g.*, Kearsley Declaration ¶¶ 18–21.) In its October 12 letter to MLC, MTI explained the data compiled in the spreadsheet:

> MICRONM047490 provides Micron's sales, revenue, cost, and profit data for its products—to the extent they were made in, sold in, or imported into the United States from August 12, 2008 through June 9, 2015—that are relevant to the 174 accused MPNs.

(Mot. Ex. B at 2.) The financial information that MTI produced relates to MTI's importation or sales of relevant products in the United States, including products MTI manufactures in the United States—and no relevant sales have been withheld. (*See* Kearsley Declaration ¶¶ 15-21.) MTI

14

already clarified that its spreadsheet describes "its sales of products that are relevant to the accused NAND Flash products made, imported, or sold in the United States"—*i.e.*, the **only** sales relevant to MLC's Section 271(a) claim of infringement.  (Mot. Ex. B at 1; *see also* Mot. 7.)  And, moreover, any one of these U.S.-based activities are relevant to Section 271(a) infringement. *Carnegie Mellon*, 807 F.3d at 1306 ("Where a physical product is being employed to measure damages for the infringing use of patented methods, . . . territoriality is satisfied when and only when any one of those domestic actions for that [sale] is proved to be present, even if others of the listed activities for that unit (*e.g.*, making, using) take place abroad.") (discussing Section 271(a)). As explained in the Kearsley Declaration, MTI's spreadsheet therefore provides all financial data for products that would be relevant to the Section 271(a) infringement and damages claims—*i.e.*, due to MTI's "making," "selling," or "importing," these items in the United States.

MLC attempts to justify its demand for additional discovery by falsely stating that the Micron (2014) 10-K "attributes **all** NAND Flash sales to the U.S. entity named in this suit."  (Mot. 11.)  MLC is incorrect.  In fact, the Micron (2014) 10–K expressly states that "'we,' 'our,' 'us' and similar terms include **Micron Technology, Inc. and its subsidiaries**, unless the context indicates otherwise."  (Mot. Ex. C, page 2 (emphasis added).)  By its plain terms, therefore, the 10–K expressly provides that sales **cannot** be attributed to one entity or another, unless explicitly specified.[3]  Furthermore, although the Micron (2014) 10–K provides information relating to "NAND Flash gigabits," as MLC notes (Mot. 5), it does not clarify whether and how **the products accused of infringement** are sold.  Moreover, although MLC argues that MTI "excluded" its own sales of accused products from the information MTI produced (Mot. 13), MLC has not shown any basis to believe that MTI has excluded any of its relevant sales.  In sum, despite MLC's mischaracterization of the (2014) 10-K's disclosure, the 10-K simply fails to demonstrate that any relevant information exists that would be responsive to MLC's request here.

Thus, MLC's request for "worldwide sales" information is a pure fishing expedition, based on false assumptions and conjecture, which militates in favor of its denial.  *Cf. Micro Motion*, 894

---

[3] MLC has asked this Court to preclude a *Daubert* challenge to the Micron (2014) 10-K.  (Mot. 20.)  But this is improper, because the 10-K conflates sales by MTI and other entities—thus, any use of the 10-K by MLC to prove sales of any product **by MTI** would be unreliable.

15

1  F.2d at 1328; *Specialized Bicycle*, 2011 WL 1599653, at *2 ("While the standard of relevancy in

2  discovery is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of

3  relevancy and to explore matter which does not presently appear germane on the theory that it

4  might conceivably become so.") (internal edits and quotation marks omitted).  MLC's speculation

5  does not warrant discovery from MTI here, because MLC has not even plausibly identified any

6  "worldwide sales" by MTI or indicated how sales by other companies not named as a defendant

7  in this case are relevant to the § 271(a) claim (and defenses) in this case and not disproportionate

8  in view of MTI's relevant sales information that MLC received.  In similar situations, courts have

9  found that additional information (of speculative relevance) is disproportionate when a patentee

10 has already received the actual information relevant to its claims.  *E.g.*, *Gilead*, 2016 WL 146574,

11 at *2 n.13.  Here, asking MTI to search for and provide additional discovery would be out of

12 proportion and unnecessarily cumulative of this case's needs, and should be precluded.

13      Furthermore, MLC has not established that "worldwide sales" of accused products by MTI

14 are relevant in a case where—as here—only a claim of direct infringement under Section 271(a)

15 is asserted and there is no allegation of any relationship between the sales of companies not

16 involved in this case and the U.S. activities of MTI.  Only acts that occur within the boundaries of

17 the United States are relevant to a claim of infringement under Section 271(a).  *MEMC Elec.*

18 *Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005) ("It is

19 well-established that the reach of section 271(a) is limited to infringing activities that occur within

20 the United States.").  And only these domestic acts can give rise to damages for infringement under

21 the § 271(a) claim MLC lodged.  *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,* 807 F.3d

22 1283, 1306 (Fed. Cir. 2015) ("[T]he patent laws . . . are to be understood against a background

23 presumption against extraterritorial reach. . . . [This] principle applies not just to identifying the

24 conduct that will be deemed infringing but also to assessing the damages that are to be imposed

25 for domestic liability-creating conduct.").  As discussed further below, recent developments in the

26 law (the *WesternGeco* and *Power Integrations* cases) do not alter these fundamental principles.

27 And, contrary to MLC's suggestion, *WesternGeco* makes no mention of the only damages claim

28 at issue here—MLC's entitlement to a reasonable royalty.

16

Even the case law relied on by MLC (albeit from an unpublished opinion originating from another district) recognizes that the Federal Rules "permit parties to obtain discovery *only regarding matter that is relevant* to a party's claim or defense." *E.g.*, *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, Civ. No. 16-300 CJC, 2017 WL 3275615, at *5 (C.D. Cal. Feb. 14, 2017) (emphasis added). In fact, multiple cases cited by MLC recognize that *information regarding foreign sales would not be relevant in all circumstances*. *See id.* at *5 (quoting *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, Civ. No. 15-1879 BEN, 2016 WL 6522808, at *7 (S.D. Cal. Nov. 3, 2016)) ("*Defendant does not have to provide discovery regarding its foreign sales and offers to sell that result in foreign sales* as those phrases are interpreted by the Federal Circuit . . . .") (emphasis added)).[4]  For example, the case law relied on by MLC involves claims for induced infringement under § 271(b), which can implicate (foreign) customer information. *E.g.*, *Polaris*, 2017 WL 3275615, at *14 (noting location of customers is relevant to inducement claims). MLC does not have an induced infringement claim under § 271(b) in this case. Regardless, MTI has already produced the relevant sales information.[5]  (*See* Kearsley Declaration ¶¶ 15–21.) And even if MLC's requested discovery were deemed relevant, MLC fails to demonstrate that its discovery demands are proportionate to what this case requires, given that MLC already has MTI's sales data for U.S. activities in hand. *Polaris*, 2017 WL 3275615, at *6 ("[T]o be discoverable, the information sought must be not only relevant and nonprivileged but also 'proportional to the needs of the case.'").

Furthermore, the circumstances of the *Power Integrations* and *WesternGeco* cases do not

_____

[4] Of note, the *FlowRider Surf* court permitted limited discovery into the basis for the defendant's definition of foreign sales. But that does not help MLC here, because MTI has explained the basis for its production in the Kearsley Declaration; thus, further discovery on this point is cumulative and unwarranted. And *Polaris* clarifies that MTI's preparation of its information does not justify further discovery. *Polaris*, 2017 WL 3275615, at *9 ("Polaris's statements that 'Kingston has unilaterally determined which sales have been made in the United States' . . . do not of themselves entitle Polaris to the discovery it seeks.").

[5] As explained in the Kearsley Declaration, MTI sells the relevant products to Micron subsidiaries, and *none* of these sales data have been withheld regardless of the location or identity of the subsidiary/affiliate. Further discovery regarding the identity of the subsidiary/affiliate customers is therefore cumulative and unwarranted.

17

compel MLC's conclusion.[6]  Both appeals focused on what sales a patentee is entitled to claim under a lost profits analysis, which is not applicable here, given that MLC has not lost any profits because it is a non-practicing entity.

A close look at the cases shows why these cases are inapposite to the facts here.  At the outset, MLC mischaracterizes the *WesternGeco* holding by stating that *WesternGeco* holds that "an award of damages based on worldwide sales is a permissible domestic application of" Section 284.  (Mot. 14.)  That is not what *WesternGeco* holds.  Rather, the Court held that (1) ***the lost profits award*** (2) ***to WesternGeco*** (3) ***under a Section 271(f) infringement claim*** was a permissible domestic application of Section 284.  138 S. Ct. at 2138.  These factors explicitly limit the applicability of the holding to the facts and issues presented in *WesternGeco*, rather than this case.  And these factors are significant because they underscore why *WesternGeco* would not apply here.

Unlike the present case, both sets of parties in *WesternGeco/Power Integrations* were competitors.  Both WesternGeco and ION made and sold the surveying technology at issue.  *See WesternGeco*, 138 S. Ct. at 2135.  Similarly, Fairchild's infringing sales deprived patentee Power Integrations of sales it would otherwise have made.  *See Power Integrations I*, 711 F.3d at 1369 (Fed. Cir. 2013) ("Significantly, Fairchild competed with Power Integrations by reverse engineering and copying of Power Integrations' products.").  Here, in contrast, MLC is a non-practicing entity, and any sales made by MTI are not sales MLC itself would have made but-for any acts of MTI's.  In other words, MLC does not compete—at any level—with MTI in the memory market.  Thus, MLC is not entitled to lost profits to compensate it for any infringement in any event.  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (*en banc*) ("[I]f the patentee is not selling a product, by definition there can be no lost profits.").  Indeed, MLC has not asked this Court to award it lost profits for any activity of MTI's.  (Complaint 4–5.)  Rather than seeking lost profits (because it cannot), MLC seeks a reasonable royalty, which is typical of non-practicing entities.  Further still, MLC has not lodged any infringement claim against MTI

---

[6] *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018) ("*WesternGeco*"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013) ("*Power Integrations I*").

18

1   under 35 U.S.C. § 271(f).  Thus, *WesternGeco* does not apply to these facts.

2      Perhaps recognizing its overreach regarding the *WesternGeco* holding, MLC stretches

3   statements made by counsel in *Power Integrations*—**a different case with far different facts**—to

4   apply the holdings in *WesternGeco/Power Integrations* to the determination of a reasonable

5   royalty here.  But that is unwarranted.  In the context of the *Power Integrations* case, counsel stated

6   that Fairchild's foreign sales (*i.e.*, sales "lost" by Power Integrations due to Fairchild's

7   infringement) were relevant to the damages calculation in that case because these sales would

8   inform the proper calculation of the reasonable royalty that Fairchild—Power Integrations' **direct**

9   **competitor**—would have had to pay.  (Mot. Ex. H, page 14.)  Again, "lost foreign sales" is simply

10  not a harm that MLC experiences in any form, because MLC does not make any sales.  MLC is a

11  non-practicing, patent-owning entity.  It does not make sales as a competitor of MTI in the memory

12  market, unlike Fairchild and Power Integrations within their respective market.  And by wrongly

13  assuming that MTI's counsel is stating that **any** defendant's foreign sales would be relevant to **any**

14  calculation of a reasonable royalty, MLC's argument goes too far.

15     Adopting MLC's interpretation of the *WesternGeco/Power Integrations* decisions would

16  ignore decades of precedent and extend far beyond the contours of this case as framed in MLC's

17  pleadings and contentions; there is no good reason to adopt such an approach.  First, *WesternGeco*

18  is silent as to the availability of foreign lost profits for a Section 271(a) claim.  *WesternGeco* does

19  not explicitly indicate that its decision applies to any and all subsections of Section 271.  And

20  *WesternGeco* did not explicitly overrule *Power Integrations I*, despite discussing that case in its

21  analysis.  *See* 138 S. Ct. at 2135.  Lastly, in *Power Integrations, Inc. v. Fairchild Semiconductor*

22  *Int'l, Inc.*, Civ. No. 04-1371 LPS, 2018 WL 4804685 (D. Del. Oct. 4, 2018) ("*Power Integrations*

23  *II*"), Judge Stark immediately certified his decision for interlocutory appeal under 28 U.S.C.

24  § 1292(b) (which is permitted when, *inter alia*, "there is . . . substantial grounds for a difference

25  of opinion as to [a legal question's] correctness"), signaling his concern with the uncertain state of

26  this law.  *See* 2018 WL 4804685, at *2.  Whatever the Federal Circuit may say about Judge Stark's

27  *Power Integrations II* decision in the future, Judge Stark's opinion is not binding on this Court

28  now.  What remains binding authority on this Court, however, is all of the Supreme Court

19

precedent MLC ignores.  A U.S. patent is not infringed overseas and the Patent Act does not compensate for infringement overseas.  *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 195 (1856) ("Our patent system makes no claim to extraterritorial effect; these acts of Congress do not, and were not intended to, operate beyond the limits of the United States . . ." (internal quotation marks omitted)); *see also Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454–55 (2007) ("The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law.").  The patent laws do not thereby provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all.  *Brown*, 60 U.S. at 195 ("And the use of it outside of the jurisdiction of the United States is not an infringement of his rights, and he has no claim to any compensation for the profit or advantage the party may derive from it.").

Thus, in view of the myriad reasons to doubt MLC's conclusion, this Court should find for MTI, because "[a]ny doubt regarding whether conduct falls outside the purview of United States patent law should be resolved by the presumption against extraterritoriality."  *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 655 (E.D. Tex. 2013) (citing *Microsoft Corp.*, 550 U.S. at 454).  Indeed, "[t]he presumption that United States law governs domestically but does not rule the world applies with particular force in patent law."  *Id.* (citing *Microsoft Corp.*, 550 U.S. at 454–55).

### C. MLC Is Not Entitled to Sanctions Under the Facts of This Case

MLC wrongly asserts that MTI's actions warrant sanctions under FED. R. CIV. P. 37(b). (Mot. 3.)  As explained above, MLC's defective motion for sanctions may be denied on procedural grounds alone.  *E.g.*, *Martinez*, 2012 WL 699462, at *4 (finding that sanctions motion failed because it was not separate from motion to compel).  It should not be granted in any event because, for two additional reasons provided below, MLC cannot make any of the necessary showings that would merit such a grant under the applicable rules and laws of this District.

<u>First</u>, although Rule 37(b) provides for sanctions for failure to comply with a court order, it is indisputable that MTI complied with the Court's Order here.  The Order required production by a date certain of documents showing financial information pertaining to certain kinds of MTI's

20

products, over a specified timeframe.  (Dkt. No. 193 at 2.)  MTI did so.  Even MLC appears to concede that MTI's production of sales information pursuant to the Court's Order was relevant, responsive, and timely.  (Mot. 8.)  The terms of the Order did not require MTI to produce information relating to non-parties not sued in this case (Micron's subsidiaries/affiliates) or any entities' sales of products outside the United States, both of which are not relevant to the § 271(a) patent infringement claim in this case for reasons explained above.  Nor did the Court's Order purport to expand the scope of accused products in this case.  *See Icon-IP*, 2014 WL 4593338, at *5 (in a patent case, defendant properly redacted sales and revenue data of unaccused products from financial spreadsheets produced in response to plaintiff's discovery requests seeking financial data).  Because no court order was disobeyed, sanctions are unwarranted.

Rather, the parties dispute whether MLC is *also* entitled to sweeping discovery into unaccused models of a broad class of products (in contravention of the Patent Local Rules, as those Rules have been interpreted by this District), non-parties, and extraterritorial sales.  MTI's understanding of the Order's directives is reasonable and grounded in the laws of this District, as explained above.  *Cf. U.S. ex rel. Barajas v. Northrop Corp.*, 26 F.3d 135 (9th Cir. 1994), *as amended* (Aug. 3, 1994) (unpublished op.) (reversing attorney fees award) ("Sanctions are inappropriate where reasonable and competent attorneys could disagree over the existence of a good faith argument.") (internal edits omitted).  To sanction MTI for failing to comply with terms that were not in the Order, and which MTI reasonably understood fell outside the Court's directives, would run afoul of the relief that Rule 37 allows.

<u>Second</u>, MLC's demand for sanctions should also be denied because MLC has not made any showing of (or even any allegation of) undue prejudice, bad faith, or other circumstances that could support its claim to relief.

A plaintiff seeking sanctions under Rule 37, as MLC does in this case, bears the burden of presenting evidence that it suffered "undue prejudice" as a result of the defendant's actions.[7]

---

[7] Notably, MLC does not explicitly rely on sanctions under Rule 26.  Under that Rule, sanctions may be awarded for failure to "conduct reasonable factual inquiries prior to filing various discovery responses and other pleadings, papers, and motions."  *Network Appliance*, Civ. No. 03-5665 MHP, 2005 WL 1513099, at *4.  However, disagreements over the scope of requested discovery, as here, "is little more than a garden-variety discovery dispute" and "a far cry" from the

*Network Appliance, Inc. v. Bluearc Corp.,* Civ. No. 03-5665 MHP, 2005 WL 1513099, at *3 (N.D. Cal. June 27, 2005), *aff'd*, 205 F. App'x 835 (Fed. Cir. 2006) (preclusive sanctions are "generally improper" without such a showing) (citing *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 190 F.R.D. 644, 648 (N.D. Cal. 2000)).  "The touchstone of the prejudice inquiry under Rule 37 is whether a discovery violation threatens to interfere with the rightful decision of the case or impairs the moving party's ability to go to trial." *Id.* (internal edits and quotation marks omitted).  The standard for sanctionable misconduct under Rule 37 is objective reasonableness, *id.* at *2, and delayed production of documents is "rarely sufficient" to meet this standard.  *Id.* at *3; *see also id.* ("[O]n the menu of sanctions that a court may select from in applying Rule 37, preclusion of evidence is among the most severe . . .").  Relatedly, a court may impose sanctions under the court's inherent power, but a showing of bad faith is required to do so.  *See id.* at *2.

MLC has not alleged that MTI has acted in bad faith.  Nor has MLC shown that it has been unduly prejudiced by any of MTI's actions.  MLC has not proffered evidence or argument that this case would be wrongly decided or that it would not be able to go to trial based on the information produced by MTI—quite the contrary, in fact, because MLC concedes that the spreadsheet MTI produced is useful to MLC's case.  (Mot. 8.)  To the extent MLC suffers prejudice, it has only itself to blame, as MLC alone has the responsibility to litigate its case.  For example, when a party "could have been more proactive in its efforts" to obtain discovery, the grant of sanctions "would be greater than what is necessary to cure" any prejudice, and, consequently, should be denied. *FTC I*, 2016 WL 7386133, at *4-5 (denying motion for exclusionary sanctions).  Absent these indispensable showings by MLC, evidentiary sanctions are inappropriate.  *Cf. L. Tarango Trucking v. Cty. of Contra Costa*, 202 F.R.D. 614, 623 (N.D. Cal. 2001) ("[A]s there is no evidence of bad faith or willfulness, plaintiffs' requested sanction of a default judgment is inappropriate.  Similarly, plaintiffs' request for evidentiary sanctions is also inappropriate.").

---

kind of action that courts in this District find sanctionable under Rule 26.  *See id.*  Further, when a plaintiff also fails to show undue prejudice under Rule 37, "the imposition of Rule 26(g) sanctions of any sort upon defendant is clearly inappropriate, and an order imposing the harsh penalty of exclusion of evidence would almost certainly be an abuse of discretion." *Id.* (denying sanctions). As MLC has not demonstrated undue prejudice in this case, sanctions under Rule 26 are likewise inappropriate.

1        In fact, granting MLC's request would **cause undue prejudice to MTI**, because such a

2   grant would "interfere with the rightful decision of the case."  *See Network Appliance*, 2005 WL

3   1513099, at *3.  MTI's (2014) 10-K clearly sets forth that the reported sales numbers include sales

4   by non-party subsidiaries/affiliates for sales that occurred outside the United States.  (*E.g.*, Mot.

5   Ex. C at 8.)  Thus, allowing the use of the 10-K to go unchallenged (as MLC seeks) would allow

6   MLC to claim damages for extraterritorial sales for claims of infringement under Section 271(a),

7   which specifically limits damages to those activities that occur in the United States.  *MEMC Elec.*,

8   420 F.3d at 1375.  In essence, the remedy MLC seeks from the Court is precluded by statute.

9   Indeed, the multitude of cases that preclude extraterritorial sales from being used as evidence of

10  damages for a Section 271(a) claim preclude the relief MLC seeks.  *E.g.*, *Power Integrations I*,

11  711 F.3d at 1371–72.

12       MLC offers no other basis for its demand to preclude MTI from even challenging the use

13  of the Micron (2014) 10-K statement under *Daubert*.  Granting such relief would be

14  unprecedented, as MLC does not cite any case law or rule that would support MLC's right to such

15  relief.  Nor are such sanctions otherwise justified under the facts of the present litigation.  MTI's

16  (2014) 10-K is a publicly available document, and there has been no impediment to MLC using

17  the 10-K's information in order to craft MLC's case to date.  But, evidently having failed to make

18  use of the 10-K to its own satisfaction, MLC now asks the Court to prevent MTI from being able

19  to even mount a defense to MLC's damages case.  MLC's request for evidentiary sanctions lacks

20  any foundation under the laws of this District and the facts of this case, and should be denied.

21  **IV.    CONCLUSION**

22       For the foregoing reasons, MTI respectfully urges this Court to deny MLC's motion to

23  compel irrelevant and disproportionate discovery, and to deny the sanctions sought by MLC.

24

25

26

27

28

Dated: November 6, 2018

Respectfully Submitted,

FISH & RICHARDSON P.C.


*/s/ Adam R. Shartzer*


Additional Counsel

Tony Nguyen (*Admitted Pro Hac Vice*)
Nguyen@fr.com
FISH & RICHARDSON P.C.
1221 McKinney Street, Ste. 2800
Houston, TX 77010
Tel:    713-654-5300
Fax:    713-652-0109

Jonathan B. Bright (*Admitted Pro Hac Vice*)
jbright@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street N.E., 21st Floor
Atlanta, GA 30309
Tel:    404-892-5005
Fax:    404-892-5002

Attorneys for Defendant
MICRON TECHNOLOGY, INC.

24