United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MLC INTELLECTUAL PROPERTY, LLC,<br>Plaintiff,<br>v.<br>MICRON TECHNOLOGY, INC., et al.,<br>Defendants. | Case No. 14-cv-03657-SI<br><br>**ORDER RE: DISCCOVERY**<br>Re: Dkt. No. 215 |

On November 15, 2018, the Court held a hearing on plaintiff MLC's motion to compel discovery and for monetary and evidentiary sanctions related to alleged discovery misconduct. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

**DISCUSSION**

MLC contends that Micron's production of sales data is incomplete for three reasons. First, MLC argues that Micron improperly limited the scope of the data by only providing sales data related to the accused devices MLC specifically identified in its infringement contentions. Second, MLC argues that Micron did not produce information about its worldwide sales, and that MLC is entitled to foreign sales data both to verify Micron's assertion that the sales are truly foreign, and because the Supreme Court has recently held that foreign sales may be used to calculate domestic damages. Third, MLC contends that it is entitled to sales data relating to all of Micron's subsidiaries and affiliates, and that Micron has improperly limited its responses to exclude any sales by those entities.

## I. Unaccused products

MLC contends that Micron's discovery responses are deficient because Micron did not provide sales data for models of its "MLC and TLC NAND Flash" products that were not specifically identified by manufacturing part number ("MPN") in MLC's infringement contentions. MLC's infringement contentions identified 174 products. *See* Dkt. No. 27-7. MLC states that it propounded an interrogatory asking Micron to "[i]dentify all 2-bit and 3-bit NAND flash memory products (referred to by Micron as 'MLC'/'multi-level cell' and 'TLC'/'triple-level cell' NAND flash devices, respectively) that Micron made, offered to sell, or sold within the United States or imported into the United States between 2008 and June 9, 2015," and that in response Micron identified 13 products by their Design ID numbers. MLC notes that these 13 Design IDs correspond to the 174 "exemplary" products listed by their MPNs in the infringement contentions, and that Micron has long known that MLC claims that all of Micron's multi-level and triple-level NAND flash products infringe the '571 patent.

Micron refers to the products that MLC identified in its infringement contentions as the "Accused Products" and the 13 products that Micron identified by Design ID numbers as the "Covered Products." *See* Kearsley Decl. ¶¶ 6-7 (Dkt. No. 225-3). MLC claims not to have understood, or even to have been alerted to, the distinction being made by Micron between "accused" and "covered" products. According to MLC, there are hundreds of NAND Flash products for which Micron did not produce sales data, and "it was not apparent to MLC that Micron was even drawing a distinction between 'Accused Products' and 'Covered Products', claiming there are 'Covered Products' that are not accused, until MLC raised the issue of the discrepancies in Micron's Sales Spreadsheet." MLC's Reply at 5 n.2 (Dkt. No. 229).

Micron's opposition brief suggests that it only provided sales data for the Accused Products which Micron makes in, sells in, or imports into the United States from August 12, 2008 through June 9, 2015. *See* Micron's Opp'n at 2-3 (Dkt. No. 226). However, Micron has submitted the declaration of Roger Kearsley, the Micron employee who prepared the sales data provided to MLC, and he states,

> At the request of MTI's counsel, I worked with a team member who reports to me to prepare a spreadsheet describing the sales, revenue, cost and profits for all

2

> Covered Products made, used, offered for sale, and/or sold in the United States by MTI, or imported into the United States by MTI and sold in the United States, between the period August 12, 2008 and June 9, 2015. I have been informed by MTI's counsel that this spreadsheet has been produced to MLC as a document bearing Bates No. MICRONM047490 ("Sales Spreadsheet").

Kearsley Decl. ¶ 15. At the hearing, it appeared that Micron's counsel represented that although Micron contends that it was not required to produce sales data for products other than the Accused Products, Micron in fact produced data for the broader set of Covered Products. If that is the case, there is no dispute between the parties on this point. If Micron did not produce sales data for Covered Products, Micron shall notify the Court by letter no later than **November 30, 2018.**

## II. Foreign sales

The parties dispute whether Micron should produce sales data regarding "foreign sales." MLC states that it needs Micron's worldwide sales data (1) to assess Micron's unilateral determination of what constitutes a "foreign sale"; and (2) because courts have held that foreign sales data is relevant to determining a reasonable royalty for domestic infringement. Micron asserts that it has adequately explained how it determined whether a sale was "foreign," *see* Kearsley Decl. ¶¶ 15-21, and that information regarding foreign sales is not relevant to claims of direct infringement under section 271(a).

MLC is correct that some courts have held that "worldwide sales information is relevant to inducement, reasonable royalty calculations, and commercial success." *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc*., Case No. CV 16-00300 CJC (RAOx), 2017 WL 3275615, at \*5 (C.D. Cal. Feb. 14, 2017) (citing cases); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CV 04-1371 LPS, 2018 WL 4804685, at \*1-2 (D. Del. Oct. 4, 2018) (applying the Supreme Court's analysis in *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137-38 (2018), to claims of direct infringement under section 271(a) and holding that the plaintiff was entitled to seek damages based on worldwide sales). The Court also recognizes that the case law regarding the relevance of foreign sales to the calculation of damages is developing and that the applicability of *WesternGeco II* to claims of direct infringement under section 271(a) remains unclear.

3

However, in light of the cases cited above, the Court finds it appropriate to allow discovery of Micron's foreign sales, and to reserve for another day the question of precisely how (or whether) Micron's foreign sales are relevant to MLC's claim for reasonable royalties based on direct infringement. Further, although Micron argues that the foreign sales discovery is not relevant or proportional to the needs of the case, Micron has not shown that it would be burdensome to produce the foreign sales data, and indeed the Kearsley declaration indicates that the information is readily available. *See* Kearsley Decl. ¶ 14.

### III. Subsidiaries and affiliates

MLC contends that Micron should produce sales data regarding sales made by wholly-owned subsidiaries and majority-owned affiliates because that information is within the possession or control of Micron. MLC cites *In re ATM Fee Antitrust Litigation*, 233 F.R.D. 542, 545 (N.D. Cal. 2005), in which the court held that "[f]ederal law requires that a parent respond to [discovery requests] with information from a subsidiary if it has access to that information and if the information is relevant and not privileged." However, in that case, there was no dispute that the wholly-owned subsidiary possessed relevant documents. *Id*. at 544. The issue was whether the parent company defendant could be required to produce those documents, which were in the possession of the non-party subsidiary. *Id*.

Here, Micron contends that the documents at issue are not relevant because MLC has not sued any of the subsidiaries or affiliates, and therefore any sales made by those entities are irrelevant to whether Micron has directly infringed.[1]

MLC argues that it is entitled to this information because Micron financially benefits from the sales made by wholly-owned subsidiaries and majority owned affiliates (a point disputed by Micron's counsel at the hearing), and because Micron has put those sales at issue by asserting an affirmative defense that allegedly infringing sales by its subsidiaries and affiliates are approved under license agreements with third parties. MLC notes that Micron's SEC 10-K filings report

---

[1] MLC has recently filed a motion to amend the complaint to add these entities as defendants.

4

1  combined sales for Micron and its subsidiaries and affiliates and do not identify the financial
2  information on an entity-by-entity basis.

3      The Court finds that MLC has demonstrated that the sales data of its wholly-owned
4  subsidiaries and majority-owned affiliates is discoverable. The Court agrees that Micron has put
5  those sales at issue by asserting that allegedly infringing sales by subsidiaries and affiliates were
6  permitted by licenses. In addition, the redacted information in the Kearsley declaration regarding
7  the location of Micron's manufacturing facilities and sales of Covered Products to subsidiaries
8  suggests that Micron's business structure may be similar to that described in *Invensas Corp. v.*
9  *Samsung Elec. Co.*, No. 2:17-cv-00670-RWS-RSP, 2018 WL 5809268, at *1-2 (E.D. Tex. Nov. 6,
10 2018). In *Invensas*, the court found that financial data for sales made by one of the defendant's
11 subsidiaries, which was not named as a defendant, was relevant and discoverable because the
12 parent defendant would deliver the products to the subsidiary, and the subsidiary entered into sales
13 contracts and sold the products to customers in the United States. The Court makes no finding at
14 this time about whether Micron would be liable for sales by Micron's subsidiaries and affiliates.

**IV. Sanctions**

17     MLC argues that Micron violated the Court's August 20, 2018 order in which the Court
18 ordered Micron "to produce by September 25, 2018, documents (such as spreadsheets) showing
19 sales, revenue, cost and profits for Micron's multi-level cell and triple-level cell NAND flash
20 products sold between August 12, 2008 and June 9, 2015, including products sold in that period
21 corresponding to Micron Design IDs 152a, 163b, 172a, 173a, 174a, 183a, 184a, 184c, 185a, 185c,
22 195b, b75a, and n85a." Dkt. No. 193. MLC argues that the Court ordered Micron to produce
23 sales data about all of its NAND flash products, and not just those identified by MLC in its
24 infringement contentions, and that MLC is entitled to sanctions based on Micron's intentional
25 violation of that order.

26     The Court disagrees. As MLC is aware, the dispute that the Court was resolving in the
27 August 20, 2018 order related to whether there should be a deadline for production, not the scope
28 of production. *See* Dkt. No. 192 (parties' joint discovery letter brief regarding dispute over

deadline). The language from the Court's order regarding what documents were to be produced (quoted above) was taken verbatim from the parties' letter brief and was not intended to address the scope of Micron's discovery obligations. *See id*. at 3. Further, as noted above, it appears that Micron did in fact produce sales data for the Covered Products, which were listed by Design ID numbers in the Court's order.

The Court also finds that MLC's request for sanctions is procedurally improper because MLC "did not comply with Civil Local Rule 7-8, which requires all sanctions requests to be brought by separately-noticed motion." *Synapsis, LLC v. Evergreen Data Sys., Inc.*, Civ. No. 05-1524 JF, 2006 WL 2884413, at *1 (N.D. Cal. Oct. 10, 2006).

## CONCLUSION

For the foregoing reasons, the Court GRANTS MLC's motion to compel discovery and DENIES MLC's request for sanctions. Micron is ordered to produce the additional discovery regarding foreign sales of Covered Products and sales of Covered Products by its affiliates and subsidiaries no later than **December 7, 2018.** If Micron did not produce sales data regarding Covered Products in its initial production, Micron shall so inform the Court no later than **November 30, 2018**; in that event, the Court will issue a supplemental order regarding the scope of the December 7, 2018 production.

**IT IS SO ORDERED**.

Dated: November 26, 2018

SUSAN ILLSTON
United States District Judge