UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MLC INTELLECTUAL PROPERTY, LLC, <br> Plaintiff, <br> v. <br> MICRON TECHNOLOGY, INC., <br> Defendant. | Case No. 14-cv-03657-SI <br><br> **ORDER RE: DISCOVERY** <br> Re: Dkt. Nos. 269, 262 |

The parties have submitted four discovery disputes to the Court. This order resolves two disputes and directs the parties to be prepared to discuss the other two disputes at the January 11, 2019 hearing.

**I.  Ownership of the '571 patent**

The first dispute concerns discovery regarding the ownership of the '571 patent. Micron contends that MLC has obstructed Micron's ability to obtain information relating to the ownership of the '571 patent, and Micron seeks an order compelling MLC to produce a corporate witness "to testify as to the ownership of the '571 patent, including the identification of all entities with an ownership interest in the '571 patent, and the terms of such interest and produce any relevant documents that have been withheld on the basis of privilege." Dkt. No. 259-4 at 3.

MLC asserts that Micron is attempting to manufacture a dispute, and that it has already provided information showing that MLC, and MLC alone, owns the '571 patent. MLC states that it has produced assignment records from the USPTO showing the chain of ownership for the '571 patent from 1997 until it was assigned from BTG International, Inc. to MLC Intellectual Property, LLC in May 2012, and that it produced the assignment agreement. *Id*. MLC also states that in

1 response to Micron's Interrogatory No. 6 regarding MLC's bases for relief in this case, MLC stated that "MLC is the holder of all rights and interests in the '571 patent," and that MLC repeated this statement in a supplemental response to the same interrogatory. *Id*. Finally, MLC states that its corporate witness regarding the ownership of the '571 patent, Robert Hinckley, testified at his deposition that MLC, and no other entity, owned the '571 patent. MLC contends that Micron is attempting to manufacture a dispute about ownership by quoting Mr. Hinckley's deposition testimony about financial interests in the '571 patent (to which MLC's counsel objected on the basis of privilege), as opposed to ownership.

The Court finds that the supplemental discovery that Micron seeks is unnecessary, subject to the following: by **January 14, 2019,** MLC shall provide a statement (in the form of a sworn declaration or a verified supplemental interrogatory response) stating in unequivocal terms that MLC has sole ownership of the '571 patent. *See Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1265 (Fed. Cir. 2007) (in order to have standing to allege infringement, plaintiff must have sole ownership of the patent or join all other owners). If MLC does not provide such an unequivocal statement, the Court will revisit the issue of supplemental discovery regarding ownership of the '571 patent.

## II. Financial interests in the '571 patent (litigation funding agreement)

Micron seeks discovery regarding "persons and entities that have a financial interest in this litigation," including an identification of any third party that is funding this litigation. MLC has objected to this discovery as privileged and irrelevant.

Micron contends that this discovery is relevant "to uncover possible bias issues." Dkt. No. 259-6 at 2. Micron asserts that it "needs to understand the existence of conflicts of interest to identify and exclude jury members who may have a bias," and that "Micron should be able to explore credibility and bias issues concerning MLC's witnesses." *Id.*

MLC responds that it has already identified all persons and entities having a financial interest in the controversy, as required by Civil Local Rule 3-15. MLC asserts that neither the federal rules nor local rules require the disclosure of litigation funding agreements except in class action suits.

1  *See* Standing Order for All Judges of the Northern District of California, ¶ 19 ("In any proposed class, collective, or representative action, the required disclosure [of Non-party Interested Entities or Persons] includes any person or entity that is funding the prosecution of any claim or counterclaim."). MLC also argues that Micron's arguments about potential bias or conflicts of interest are unpersuasive, and MLC states that none of the non-party percipient witnesses are funding this litigation.

The Court concludes that Micron is not entitled to the discovery it seeks because it is not relevant. MLC has complied with the local rules and disclosed persons and entities with a financial interest in this case as defined by 28 U.S.C. § 455(d)(1), (3) and (4). If this case proceeds to trial, the Court can question potential jurors *in camera* regarding relationships to third party funders and potential conflicts of interest. MLC has confirmed that the non-party witnesses are not funding this litigation. As such, Micron's assertions of potential bias and conflicts of interest are speculative. The cases cited by Micron do not support Micron's broad request, as the courts simply held that fee and litigation funding agreements could be discoverable when there was a specific, articulated reason to suspect bias or conflicts of interest. *See Yousefi v. Delta Elec. Motors*, No. C13-1632 RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue. If, however, Local 46 has not merely donated funds or expertise to pursue these claims but has an expectation of payment if and only if plaintiff prevails, evidence of that financial interest may be relevant to determining the credibility and potential bias of Local 46 witnesses."); *Nelson v. Millennium Labs*, Case No. 2:12-cv-01301-SLG, 2013 WL 11687684, at *5-6 (D. Ariz. May 17, 2013) (court ordered production of the plaintiff's fee agreements because the defendant asserted that a market competitor was funding the plaintiff's litigation).

### III. Communications between Messrs. Banks and Hinckley and the attorney client privilege

Micron seeks discovery of communications between MLC's CEO Jerry Banks and MLC's

Chairman and counsel Robert Hinckley between January 1, 2014 and October 2, 2017. Micron contends that it is entitled to these communications because Mr. Hinckley's law license was inactive, and Mr. Hinckley testified that he did not provide legal advice during that time. MLC contends that these communications are privileged and that Mr. Hinckley did, in fact, provide legal advice.

The Court cannot resolve this issue on the present record, as neither party has provided any declarations or evidentiary support for the factual assertions made in the letter brief.[1] Accordingly, at the January 11, 2019 hearing, the parties shall be prepared to discuss what further proceedings are necessary to resolve this matter.

## IV. ITC investigation documents

Micron seeks an order compelling MLC "to have produced, or consent to the production of, any responsive non-privileged 683 Investigation documents that may contain MLC's confidential information." Dkt. No. The 683 investigation was initiated in 2009 by BTG, MLC's predecessor-in-interest to the '571 patent, and it proceeded through an evidentiary hearing and post-hearing briefing before settling in 2010. Micron states that it has subpoenaed the relevant ITC-related documents from McKool Smith, the law firm that represented MLC and BTG during the 683 Investigation, and that it has also subpoenaed the documents directly from the ITC. Micron also states that it has moved to enforce those subpoenas in the Northern District of Texas and the District of Columbia, and that it has moved to transfer those subpoena enforcement actions to this Court. Micron seeks, *inter alia*, testimony that Mr. Banks provided during the ITC Investigation through deposition, written statements, and at the evidentiary hearing. Micron states that to date it has only received a "rough" transcript of Mr. Banks' deposition.

MLC states that it has provided all of the documents in its possession (totaling thousands of pages), and that any remaining documents can only be produced by McKool and the ITC. MLC asserts that the documents that remain to be produced contain third-party confidential information,

---

[1] Both parties rely on *Gucci America Inc. v. Guess?*, No. 09 Civ. 4373(SAS), 2011 WL 9375 (S.D.N.Y. Jan. 3, 2011), to argue that the privilege does or does not apply here. However, the record in *Gucci* was extensive and included, *inter alia*, four briefs and ten affidavits or declarations. *Id*. at *1.

4

and that such documents are governed by an ITC protective order.

It is the Court's view that Mr. Banks' ITC testimony is producible in this case, and that MLC should make every effort to obtain Mr. Banks' testimony and produce it. It is unclear to the Court exactly what MLC has already done in this regard, and MLC shall be prepared to address this issue at the January 11, 2019 hearing. Micron shall be prepared to discuss the status of the subpoena enforcement actions at the January 11, 2019 hearing. Finally, both parties shall be prepared to discuss, with specificity, what ITC documents MLC has already produced to Micron and what ITC documents have not been produced to Micron.

**IT IS SO ORDERED**.

Dated: January 7, 2019

SUSAN ILLSTON
United States District Judge