UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MLC INTELLECTUAL PROPERTY, LLC, Plaintiff, v. MICRON TECHNOLOGY, INC., Defendant. | Case No. 14-cv-03657-SI  **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND INFRINGEMENT CONTENTIONS; AND ADJUSTING PRETRIAL AND TRIAL SCHEDULE**  Re: Dkt. No. 307 |

On February 22, 2019, the Court held a hearing on plaintiff's motion to amend infringement contentions. For the reasons set forth below, the Court GRANTS in part and DENIES in part the motion.

In addition, because certain deadlines have been held in abeyance pending the resolution of this motion, the Court sets a new schedule for the filing of various expert reports and pretrial motions. Those deadlines are set forth at the end of this order. In addition, due the Court's calendar, the final pretrial conference is rescheduled from **July 23, 2019 to July 16, 2019 at 3:30 p.m.**, and the trial date is moved from **August 5, 2019 to August 12, 2019**.

**DISCUSSION**

On February 1, 2019, plaintiff MLC moved to amend its infringement contentions. MLC characterizes the proposed amended infringement contentions as simply adding evidentiary technical details to the original infringement contentions, while defendant Micron contends that MLC is improperly attempting to introduce new theories of infringement. In addition, the amended infringement contentions seek to add approximately 2,600 new products to the list of accused

products in this case. Micron argues that there is no good cause for amendment, and that if the amendments are permitted, discovery will need to be reopened and Micron must be allowed to amend its invalidity contentions.

Patent Local Rule 3-6 provides:

> Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include:
>
> (a) A claim construction by the Court different from that proposed by the party seeking amendment;
>
> (b) Recent discovery of material, prior art despite earlier diligent search; and
>
> (c) Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

N.D. Cal. Patent L.R. 3-6.

"The local patent rules in the Northern District of California . . . requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1365–66 (Fed. Cir. 2006). In contrast to the more liberal policy for amending pleadings, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Elecs. Inc. v. Q–Lity Computer Inc*., 211 F.R.D. 360, 367 (N.D. Cal. 2002).

Accordingly, "[t]he moving party has the burden of demonstrating good cause." *Karl Storz Endoscopy-Am. v. Stryker Corp*., No. 14-0876-RS (JSC), 2016 U.S. Dist. LEXIS 176876, at *7 (N.D. Cal. Dec. 21, 2016). Good cause exists where the moving party has acted diligently and the opposing party will not be prejudiced. *Id*. The moving party bears the burden of first establishing diligence. *O2 Micro*, 467 F.3d at 1355; *Radware Ltd. v. F5 Networks, Inc*., No. 13–02021-RMW, 2014 WL 3728482, at *1 (N.D. Cal. July 28, 2014) ("The burden is on the movant to establish diligence rather than on the opposing party to establish lack of diligence."). Diligence consists of

two steps: "(1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Monolithic Power Sys., Inc. v. Silergy Corp.*, No. 14-1745-VC (KAW), 2015 WL 5440674, at *2 (N.D. Cal. Sept. 15, 2015). "In considering the party's diligence, the critical question is whether the party could have discovered the new information earlier had it acted with the requisite diligence." *Radware*, 2014 WL 3728482, at *1.

"If the court finds that the moving party has acted with diligence, it must then determine whether the nonmoving party would suffer prejudice if the motion to amend were granted." *Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 12-0630-LHK (PSG), 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013) (internal quotation marks omitted). "Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders." *Karl Storz Endoscopy-Am.*, 2016 U.S. Dist. LEXIS 176876, at *8. However, when the moving party is unable to show diligence, there is "no need to consider the question of prejudice." *O2 Micro*, 467 F.3d at 1368.

**I.     Additional technical information**

The Court concludes that MLC has failed to demonstrate diligence with regard to adding technical details to the infringement contentions, and thus does not reach the question of prejudice (or relatedly, whether the amendments in fact introduce new theories). MLC asserts that it sought to amend its infringement contentions as soon as it obtained essential technical discovery from Micron, specifically Micron's schematics and the December 2018 and January 2019 depositions of Micron's witness Mr. Helm, who was able to explain those schematics. MLC argues that Micron obstructed its efforts to review the schematics by, *inter alia*, insisting that a non-standard protective order be in place prior to review of the schematics, refusing to provide paper or electronic copies (and when paper copies were provided, they were illegible), delaying in responding to requests, and imposing other unreasonable conditions on review.

While the Court has no doubt that Micron could have been much more cooperative in the discovery process in general, and with regard to the production and review of the schematics in particular, the Court also finds that MLC should have been much more diligent in pursuing

3

important technical discovery. This case was filed on August 12, 2014. Micron served its initial disclosures on November 13, 2014, and these disclosures identified Mr. Helm as a "Micron Fellow" "believed to have technical information related to the accused device(s) and/or system(s)." Bright Decl. Ex. A (Dkt. No. 319-1). The case was stayed on February 3, 2015, due to the *inter partes* review of the '571 patent. MLC did not seek Mr. Helm's deposition or Micron's schematics prior to the stay. The stay was lifted on March 29, 2016, and MLC did not seek to review Micron's schematics until October 4, 2016. *Id*., Ex. C (Dkt. No. 319-4).

The Court issued the initial claim construction order on November 4, 2016. Dkt. No. 95. The need for technical discovery regarding Micron's products should have been apparent at the very latest when that order was filed, and arguably much earlier than that. However, MLC did not seek any relief from the Court with regard to the protective order and review of the schematics until May 2017. Dkt. No. 129. If Micron was withholding critical discovery due to the lack of a protective order, MLC should have requested the Court's intervention earlier.[1]

MLC reviewed the electronic schematics for a week in June 2017, and yet did not notice its first Rule 30(b)(6) deposition, which was on technical topics, until October 20, 2017. Although the case was stayed from November 1, 2017 until July 2018 due to the *ex parte* reexamination requested by Micron, MLC has not explained why it waited until October 2017 to issue its first deposition notice, particularly since Micron identified Mr. Helm as a witness knowledgeable about technical aspects of Micron's products on November 13, 2014. When the stay was lifted in July 2018, MLC represented that "no major issues remain pending" and identified five specific discovery disputes that might require the Court's intervention; none of the five issues related to the Rule 30(b)(6) deposition. At the July 20, 2018 case management conference, the Court set the final pretrial schedule, which included a December 14, 2018 fact discovery cutoff. Dkt. Nos. 183, 184. MLC did not follow up with scheduling the Rule 30(b)(6) deposition until October 24, 2018. MLC noticed

---

[1] MLC asserts that it sought the Court's assistance in November 2016 by raising the issue at a case management conference. However, informing the Court in a case management conference statement that the parties were still negotiating the terms of a protective order is not tantamount to requesting the Court's assistance to resolve a dispute. Dkt. No. 98.

4

Mr. Helm's deposition on November 2, 2018, and took his first deposition on December 5, 2018, and his second limited deposition in January 2019.

Under these circumstances, the Court concludes that MLC has not been diligent in seeking the basis of the technical amendments. If, as MLC asserts, the proposed technical amendments simply add more detail and do not change any theories, the denial of this aspect of the motion is of no consequence to MLC.

## II. Additional products

Although it is a close call, the Court reaches a different conclusion with regard to amending the infringement contentions to add approximately 2,600 products and finds that MLC has shown good cause to accuse additional products. The history of Micron's disclosures and MLC's discovery regarding Micron's products has been long and complicated and the subject of several court orders. However, the Court finds the following facts significant. First, although MLC's complaint and initial infringement contentions identified 174 Micron products by product number ("MPN"), Micron repeatedly responded to discovery about the accused products in terms of 13 non-public Design IDs, and Micron never clearly informed MLC that the 13 Design IDs covered not only the 174 MPNs named in the complaint, but also included over 2,600 additional products. For example, Micron's schematics corresponded to the 13 Design IDs, and not MPNs. When MLC issued the Rule 30(b)(6) deposition notice discussed *supra*, the noticed deposition topics were organized by Design ID number and referred to the "Design-IDs-In-Suit"; Micron did not object that the deposition sought discovery beyond the scope of this litigation. Horton Decl. Exs. 16-17. It is true that Micron objected to Interrogatory No. 10, which asked Micron to identify all products associated with the 13 Design IDs, on the ground that the interrogatory sought information beyond the Accused Products. Horton Decl. Ex. 7. MLC should have immediately sought clarification of this issue and requested the Court's intervention if necessary. However, it is also the Court's view that Micron's response to Interrogatory No. 10 (and other related interrogatories) was inadequate because it included a litany of boilerplate objections and stated that Micron's response would be made through document production.

5

Second, and of critical importance to the Court, Micron did not clarify the issue when the parties submitted a joint letter brief to the Court on August 17, 2018. The letter was aimed at "resolving a discovery dispute regarding the production of documents showing sales, revenue, cost, and profits for the accused products during the period of alleged infringement," which was one of the five discovery matters mentioned in the July 2018 case management conference statement. Dkt. No. 192. Specifically, MLC requested that the Court "compel Micron to produce by September 25, 2018, sales and financial information for Micron's multi-level cell and triple-level cell NAND flash products sold between August 12, 2008 and June 9, 2015, including products sold in that period corresponding to Micron Design IDs 152a, 163b, 172a, 173a, 174a, 183a, 184a, 184c, 185a, 185c, 195b, b75a, and n85a." *Id*. In response, Micron asserted that it had not delayed and that, *inter alia*, "As to the specific information MLC seeks here—documents showing sales and cost information on an accused-product-specific basis—Micron explained that it does not, in the normal course of business, generate or maintain such documents." *Id*. at 4. Micron did not object to the discovery on the ground that MLC was seeking information on non-accused products. To the contrary, Micron stated that "Micron has agreed to resume creating the information MLC seeks and offered, in writing, to produce it by September 25, 2018." *Id*. Thus, as the issue was framed and presented to the Court, the sole dispute concerned the deadline for production, *not* the scope of production. If Micron was going to take the position that sales and financial discovery for the products covered by 13 Design IDs was overbroad, Micron should have informed MLC and the Court of that position in the joint letter brief.

In an order filed August 20, 2018, the Court granted MLC's request and set a September 25, 2018 deadline for the production of "sales and financial information for Micron's multi-level cell and triple-level cell NAND flash products sold between August 12, 2008 and June 9, 2015, including products sold in that period corresponding to Micron Design IDs 152a, 163b, 172a, 173a, 174a, 183a, 184a, 184c, 185a, 185c, 195b, b75a, and n85a." Dkt. No. 193.

The third significant fact for the Court relates to Micron's representations about its compliance with the August 20, 2018 discovery order. On October 23, 2018, MLC moved for sanctions. MLC complained Micron had not complied with the Court's August 20, 2018 discovery

order because Micron had produced incomplete sales and financial information. Dkt. No. 214-4. Micron's opposition to the motion asserted for the first time that MLC was improperly seeking discovery on a broader set of products (which it referred to as the "Covered Products," meaning products covered by the 13 Design IDs), rather than the narrower set of products covered by the 174 MPNs (which it referred to as the "Accused Products"). Dkt. No. 226 at 5-6. In opposition to the sanctions motion, Micron filed the declaration of Micron employee Roger Kearsley, who explained Micron's process for searching and producing the requested sales and financial data; Mr. Kearsley's declaration also distinguished between "Accused Products" and "Covered Products." Dkt. No. 225-3. Nevertheless, at the November 15, 2018 hearing on the motion for sanctions, Micron's counsel represented that it had in fact produced sales data for "Covered Products" which corresponded to the 13 Design IDs listed in the Court's order. In the Court's November 26, 2018 Order Granting in Part and Denying in Part MLC's motion for sanctions, the Court stated that based upon Micron's representation, it appeared there was "there is no dispute between the parties on this point. If Micron did not produce sales data for Covered Products, Micron shall notify the Court by letter no later than November 30, 2018." Dkt. No. 240 at 3. Micron did not file anything on November 30, 2018.

On December 18, 2018, Micron's counsel filed a letter with the Court stating,

> [I]n preparation for Mr. Kearsley's 30(b)(6) deposition, Micron discovered that a miscommunication led to an incorrect description of the search of Micron's database for financial data relevant to the Court's prior order. [Dkt. No. 193.] To be clear, the sales data already produced by Micron includes all sales by Micron and its subsidiaries in the United States and the rest of the world of all products accused by MLC in its infringement contentions. However, Micron (and its declarant, Roger Kearsley) discovered today that the characterization of its previous production as including sales data for all Marketing Part Numbers corresponding to the Design IDs listed in Mr. Kearsley's declaration was based on an incorrect understanding. The previous production included sales data for all Marketing Part Numbers identified in MLC's infringement contentions and additional Marketing Part Numbers that share a base Marketing Part Number, but did not include sales data for all Marketing Part Numbers corresponding to those Design IDs.

Dkt. No. 256. The letter further stated, "As a result of this new understanding, Micron will update the financial data it previously produced in response to the Court's prior order." *Id*. Micron's counsel submitted a corrected declaration for Mr. Kearsley, which now distinguished between "Accused Products," "Covered Products" and "Searched Products." Dkt. No. 255.

On December 19, 2018, MLC filed a motion to compel contending, *inter alia*, that Micron

7

had failed to comply with the November 26, 2018 discovery order and related orders because Micron had not produced discovery for products covered by Design IDs other than the 13 Design IDs mentioned in the August 30, 2018 order. Dkt. No. 258. By this point, MLC had learned that there were other Micron multi-level and triple-level cell products beyond those covered by the 13 Design IDs that MLC believed infringed the '571 patent. MLC also contended that Micron had not produced sales data for the "Covered Products" as Micron had represented at the November 15, 2018 hearing, based upon information that MLC had recently learned from Micron.

The Court held a hearing on the motion on January 11, 2019, during which Micron's counsel represented that it had made a supplemental production of sales and financial data on January 3, 2019, and that it had now produced full discovery regarding the "Covered Products." The Court issued an order on January 14, 2019, denying MLC's motion to compel. The Court found that based upon Micron's representation regarding the January 3, 2019 supplemental production, Micron had now complied with the earlier discovery orders. The Court rejected MLC's assertion that the earlier discovery orders had addressed discovery beyond products covered by the 13 Design IDs and denied MLC's request to reopen discovery in order to conduct discovery on products covered by Design IDs beyond the 13. Dkt. No. 291 at 1-3. The Court's order stated in relevant part,

> The Court concludes that MLC is not entitled to reopen discovery. As an initial matter, the complaint and the infringement contentions did not accuse "all" of Micron's MLC/TLC NAND flash products, nor did the complaint and infringement contentions accuse exemplary products. Instead, the complaint and infringement contentions specifically and only accused 174 products identified by manufacturing part number ("MPN"). The Court recognizes that Micron's responses to discovery, which were framed in terms of 13 Design IDs, may have led MLC to believe that the 174 MPNs and the 13 Design IDs covered the exact same group of products. The Court leaves for another day whether MLC may seek damages for the broader group of products covered by the 13 Design IDs.

*Id.* at 1-2.

That day has arrived, and the Court concludes that MLC has shown good cause to accuse the additional products that are covered by the 12/13 Design IDs.[2] The history recounted *supra* shows that both parties used the 13 Design IDs as the shorthand for referring to the accused products,

---

[2] MLC states that based upon its review of recent discovery, it wishes to "narrow" the range of products by accusing products covered by 12 of the Design IDs.

8

and that it was not until November 6, 2018, in response to MLC's motion for sanctions, that Micron stated that the 13 Design IDs covered a broader set of products than the 174 MPNs. Even then, Micron's descriptions of what it produced in discovery were inaccurate and confusing and needed to be corrected and clarified. Under all of these circumstances, the Court finds it appropriate to allow MLC to add the products at issue.

The Court also finds that there is no prejudice to Micron. Micron has already produced the schematics and sales and financial data for the Design IDs at issue. MLC represents that the additional products have the identical circuit design as the products that are already in the case, and that no new discovery is needed. Micron asserts that there "may" be technical differences between the new products and the 174 original products but could not identify any differences at the hearing on this motion, and thus any prejudice to Micron is speculative. In any event, the information about Micron's products is within Micron's possession, and thus the Court is not persuaded that Micron will be prejudiced.

Micron also argues that some of the new products are sold by subsidiaries and affiliates, and thus should not be part of the case. However, MLC has long asserted that Micron is liable for these sales. This issue can be resolved through a motion in limine or at trial.

### III. Pretrial schedule

In light of the above, the Court adjusts the pretrial and trial schedule as follows:

| | |
|---|---|
| Damages expert reports: | March 15, 2019 |
| Rebuttal technical expert reports: | March 15, 2019 |
| Rebuttal damages expert reports: | April 1, 2019 |
| Technical expert discovery cutoff: | April 1, 2019 |
| Damages expert discovery cutoff: | April 15, 2019 |
| Filing technical Daubert motions and motions in limine: | April 15, 2019 |
| Filing damages Daubert motions and motions in limine: | April 22, 2019 |
| All oppositions: | May 3, 2019 |
| All replies: | May 10, 2019 |

| | |
|---|---|
| Hearing: | May 31, 2019 at 9:00 a.m. |
| Pretrial conference: | July 16, 2019 at 3:30 p.m. |
| Trial: | August 12, 2019 at 8:30 a.m. |

No further adjustments to the schedule will be made.

## CONCLUSION

MLC's motion to amend infringement contentions is DENIED as to the technical detail amendments and GRANTED with regard to adding new products. MLC shall serve the amended infringement contentions within 3 days of the filing date of this order.

**IT IS SO ORDERED**.

Dated: February 28, 2019

_____
SUSAN ILLSTON
United States District Judge