UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MLC INTELLECTUAL PROPERTY, LLC, <br> Plaintiff, <br> v. <br> MICRON TECHNOLOGY, INC., <br> Defendant. | Case No. 14-cv-03657-SI <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MICRON'S MOTION TO STRIKE PORTIONS OF THE LEE REPORT** <br><br> Re: Dkt. No. 371 |

On April 19, 2019, the Court held a hearing on Micron's motion to strike portions of the expert report of Dr. Jack Lee. For the reasons set forth below, Micron's motion is GRANTED in part and DENIED in part.

## BACKGROUND

MLC served its initial infringement contentions on December 5, 2014. Dkt. No. 306-10 at Appx. A (Initial Infringement Contentions). On February 1, 2019, MLC filed its first motion for leave to amend the infringement contentions. Dkt. Nos. 306-307 (MLC's Motion to Amend). As relevant here, MLC stated that it sought to "add evidence of infringement, not theories," Dkt. No. 328 at 3 (MLC's Reply), and that the proposed amendments simply added technical evidentiary detail which was previously unavailable. MLC also sought to add additional Micron products to this case. Micron opposed the motion to amend on numerous grounds, including that the proposed amendments introduced new theories of infringement.

In an order filed February 28, 2019, the Court granted MLC's motion with respect to adding more products and denied the balance of the motion, finding that MLC had not demonstrated diligence in seeking to amend to add technical detail to the infringement contentions. Dkt. No. 344.

The Court did not reach the question of whether the proposed amendments in fact included new theories of infringement.

On March 4, 2019, MLC served its first amended infringement contentions, which contain the same content as the 2014 infringement contentions as well as the additional accused products as permitted by the Court. Dkt. No. 370-7 (Amended Infringement Contentions).

On January 28, 2019, MLC served the expert report of Dr. Jack Lee. Dkt. No. 370-8 (Dr. Lee's Report). On March 20, 2019, Micron filed a motion to strike portions of the Lee Report. Micron contends that the Lee Report violates the Northern District's Local Patent Rules in several respects and that it contains the same new infringement theories that MLC sought to introduce through its unsuccessful motion to amend infringement contentions.

## LEGAL STANDARD

"This District's Patent Local Rules require both parties to provide early identification of their respective infringement and invalidity theories." *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG (JSC), 2018 WL 620169, at *1 (N.D. Cal. Jan. 30, 2018). Patent Local Rule 3-1 states that a party claiming patent infringement must serve a "Disclosure of Asserted Claims and Infringement Contentions" that contain, *inter alia*, the following information:

> (a) Each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;
>
> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> (c) A chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.
>
> . . .

Patent L.R. 3-1(a)-(c). "Once served, the contentions constitute the universe of the parties'

respective theories, and those contentions may be amended only by order of the court and upon a showing of good cause." *Finjan*, 2018 WL 620169, at *1 (citing Patent L.R. 3-6).

The purpose of these disclosures is to "require parties to crystallize their theories of the case early in the litigation," *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. 1998)), in order to "further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, Case No. 10-cv-2037, 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012) (citation and internal quotation marks omitted). "The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro*, 467 F.3d at 1366. The Patent Local Rules "do not, as is sometimes misunderstood, require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case." *DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (citation and internal quotation marks omitted).

"Given the purpose of these disclosure requirements, expert reports cannot go beyond the bounds of the disclosed infringement theories and introduce new theories not disclosed in the contentions." *KlausTech, Inc. v. Google LLC*, No. 10-cv-05899-JSW (DMR), 2018 WL 5109383, at *3 (N.D. Cal. Sept. 14, 2018). A "party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *ASUS Comp. Int'l v. Round Rock Research, LLC*, No. 12-CV-02099-JST, 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014). "If the theory is new, prejudice is 'inherent in the assertion of a new theory after discovery has closed.'" *Finjan*, 2018 WL 620169, at *2 (quoting *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-CV-02243-JST, 2014 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014)). "The dispositive inquiry . . . is . . . whether the allegedly undisclosed theory is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the theory is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation."

3

*Finjan*, 2018 WL 620169, at *2.

The Court "has wide discretion in enforcing the Patent Local Rules." *Id.* (citing *O2 Micro,* 467 F.3d at 1365-66).

## I. Identification of structures for means-plus-function claims

Micron moves to strike portions of Dr. Lee's expert report on two separate but related grounds. First, Micron contends that MLC's amended infringement contentions violate Patent Local Rule 3-1(c) because they do not disclose any structures for the means-plus-function claims, and Micron argues that MLC may not identify structures for the first time in an expert report. Micron does not cite any case law addressing the situation where a party has failed to identify structures in infringement contentions but does so in an expert report.

MLC asserts that Dr. Lee properly applied the Court's construction of the function and the corresponding structure of the terms at issue, and that Dr. Lee is simply adding "evidentiary detail." MLC also argues that it could not identify specific Micron circuits as structures in the infringement contentions because (for reasons disputed by the parties) it did not have the necessary technical discovery from Micron until late 2018 and early 2019.

The Court has reviewed the voluminous materials submitted by the parties, including the amended infringement contentions, Dr. Lee's report, as well as the original and supplemental claim construction briefing in this case. The Court finds that while Micron makes some persuasive arguments about the lack of specificity in the infringement contentions, the Court also notes that Micron never challenged those contentions as inadequate for failure to identify structures for the means-plus-function claims. In addition, MLC did identify structures in the claim construction briefing. *See* Dkt. No. 58-1 (MLC's Proposed Claim Constructions). On this record, the Court finds that it would be improper to strike portions of Dr. Lee's report based solely on the failure to disclose specific structures in the infringement contentions.

## II. New theories

Micron also contends that the identification of structures for the "comparing" and "selecting"

4

processes introduced new theories of infringement, and that MLC has introduced a new theory of infringement for Claim 45.[1]

### A. "Comparing"

Dr. Lee states in his report that Micron's comparator "includes the memory cell." Dkt. No. 370-8 at 99 (Lee Report ¶ 189). Micron argues that this is a new theory and that MLC has never previously disclosed or even suggested that the comparator included the memory cell or that the comparator is the memory cell.

The infringement contentions state,

> The Accused Product includes a comparator means for comparing a voltage of the multi-level memory cell with the selected reference voltage. In particular, the Accused Product compares a voltage of the memory cell to the selected reference voltage (the Verify voltage) to measure whether the cell has been properly programmed to the desired state.
>
> The comparator means in the Accused Product also generates a control signal indicating whether the state of said multi-level memory cell is the state corresponding to the input information. In particular, once the threshold voltage of the memory cell has reached the reference voltage, a control signal prevents the programming pulses from applying additional voltage to the cell.

Dkt. No. 370-7 at 7 (Amended Infringement Contentions at 7).

MLC's infringement contentions describe the comparator as distinct from the memory cell because the comparator is receiving an input from the memory cell and comparing that input with a reference voltage. Further, throughout the claim construction briefing, MLC referred to the comparator in terms distinct from the memory cell, asserting that "a comparator circuit compares the programmed state of the memory cell with the reference signal to verify whether the memory cell has in fact been programmed according to the desired memory state." Dkt. No. 72 at 4 (MLC's Opening Claim Construction Brief).[2] The focus during the claim construction briefing was whether

---

[1] Micron's reply brief clarifies that it does not contend that the identification of structure for the "programming" processes introduced a new theory of infringement. Dkt. No. 407 at 12 (Micron's Reply).

[2] Similarly, in its Claim Construction Statement MLC proposed construing "comparator means for comparing a voltage of said multi-level memory cell with the selected reference voltage, said comparator means further generating a control signal indicating whether the state of said multi-level memory cell is the state corresponding to said input information" as "[c]ircuitry to compare a

5

the comparator should be defined as an "analog comparator" limited to the specific embodiment depicted in Figure 8 of the patent, as Micron proposed, or whether the comparator could include digital comparators, as MLC argued. *See, e.g.*, Dkt. No. 76 at 2 (MLC's Reply Claim Construction Brief); Dkt. No. 76-6 (Dr. Lee's Claim Construction Declaration). MLC never asserted that the comparator could include the memory cell. The Court agreed with MLC that the comparator was not limited to the specific embodiment depicted in Figure 8 and that the comparator could be digital. However, the fact that the Court did not limit the comparator to the depiction in Figure 8 does not mean, as MLC asserts now, that the Court's construction embraced a theory in which the comparator included the memory cell or was the memory cell, when that theory was never disclosed or argued by MLC.

At the hearing, MLC argued that its infringement contentions "point to" the memory cell as the comparator because the contentions state (in the section directly following the section quoted above),

> If the voltage threshold of the memory cell is below the verify reference voltage, the bit line (shown to the right in blue)[3] is pulled down to zero. This is followed by another programming pulse being applied to the word line (shown to the right in red).
>
> If the voltage threshold of the memory cell is at or above the verify reference voltage, the memory cell is turned off and the bit line (shown to the right in blue) stays high. This results in an inhibit pulse being applied on the bit line (shown to the right in blue) which prevents the programming pulse applied to the word line (shown to the right in red) from adding any more charge to the memory cell which leaves the voltage threshold of the memory cell unchanged for any following programming pulses. In other words, the comparator means has determined that the proper state has been achieved.

Dkt. No. 370-7 at 8 (Amended Infringement Contentions at 8). MLC argues that because the infringement contentions describe what happens to the bit line depending on the voltage threshold of the memory cell, this necessarily means that the infringement contentions disclose that the comparator includes the memory cell.

The Court is not persuaded. If MLC wished to assert that the comparator includes the

---

voltage of the multi-level memory cell with the selected reference voltage, and that generates a control signal indicating whether the state of the multi-level memory cell is the state corresponding to the input information." Dkt. No. 58-1 at 12.

[3] The text is referring to images contained in a chart from page 19 of the TechInsights report.

memory cell or that the comparator is the memory cell, MLC was required to explicitly disclose that theory. MLC's infringement contentions and claim construction briefing never asserted that the comparator included the memory cell, and to the contrary consistently treated the memory cell and the comparator as separate. At the most, the language that MLC relies on constituted an implicit disclosure. However, "[i]mplicit disclosures are contrary to the purpose of the local patent rules, which require parties to disclose the basis for their contentions in order to make them *explicit* and streamline patent litigation." *KlausTech, Inc*., 2018 WL 5109383, at *4 (internal quotation marks omitted, emphasis in original) (striking portions of an expert report disclosing theory that mobile operating system was the claimed "browser" because the theory was not disclosed in the infringement contentions and implicit disclosures are insufficient); *Thought, Inc. v. Oracle Corp*., No. 12-cv-05601-WHO, 2016 WL 3230696, at *6 (N.D. Cal. June 13, 2016) ("Thought's current argument that this theory was 'implicitly' disclosed and that Oracle should have realized Thought intended to rely on the 'internal' wrapped sessions [when the infringement contentions did not disclose this theory] is gamesmanship. The purpose of requiring parties to disclose the basis for their contentions is to make them explicit and streamline patent litigation.").

Accordingly, the Court GRANTS Micron's motion to strike the portions of Dr. Lee's report that describe the comparator as including the memory cell.

### B. "Selecting"

Micron argues that the operative infringement contentions implicitly advanced the theory that the "selecting" limitation was met by selecting between three verify reference voltages, and that the structures identified by Dr. Lee in the report are inconsistent with that theory because the circuits identified cannot select between three voltages. Micron asserts that each of the circuits can only receive two possible inputs, and thus that the circuits are not "selecting" from a plurality of reference voltages. Micron argues that MLC (through Dr. Lee) has identified the specific circuits at issue in order to avoid the consequences of the Court's supplemental claim construction, which construed "selection device" to exclude a circuit that outputs a voltage from a resistor ladder. Micron has also requested leave to file a motion for summary judgment of non-infringement regarding the

7

"selecting" limitations.

The Court is not persuaded that MLC has introduced a new theory regarding "selecting" through Dr. Lee's report. However, the Court will grant Micron leave to file **one** motion for summary judgment on non-infringement regarding the "selecting" limitations. <u>If such a motion is filed, it shall be set for hearing on June 14, 2019 at 10:00 am.</u>

### C. Claim 45

Micron moves to strike Paragraph 212 of Dr. Lee's report, arguing that Dr. Lee's report is the first time that MLC discloses its theory for claim element 45(d). Claim 45 states,

> **45.** A method of programming an electrically alterable non-volatile memory cell having more than two predetermined memory states, said method comprising:
>
> selecting one of a plurality of reference signals in accordance with information indicating a memory state to which said memory cell is to be programmed, each reference signal corresponding to a different memory state of said memory cell;
>
> applying a programming signal to said memory cell; and [d] *controlling the application of said programming signal to said memory cell based on the selected reference signal*.

'571 Patent at Col. 16, Lines 42-53 (emphasis added). The italicized language is what the parties refer to as claim element 45(d).

In his report, Dr. Lee states that Micron is infringing element 45(d) for the same reasons that Micron is infringing claim elements 30(b) and 30(c). *See* Dkt. No. 370-8 at 104 (Lee Report ¶ 212 "See evidence for claim 30(b) and claim 30(c)"). Claim 30 states,

> **30.** Apparatus for programming an electrically alterable non-volatile memory cell having more than two predetermined memory states, comprising:
>
> a selecting device which selects one of a plurality of reference signals in accordance with information indicating a memory state to which said memory cell is to be programmed, each reference signal corresponding to a different memory state of said memory cell;
>
> [b] *a programming signal source to apply a programming signal to said memory cell; and*
>
> [c] *a control device to control the application of said programming signal to said memory cell based on the selected reference signal.*

'581 Patent at Col. 15, Lines 9-22 (emphasis added). The italicized language is what Dr. Lee refers

to as claim elements 30(b) and 30(c). However, for reasons that are unexplained, MLC's infringement contentions identify the elements of claim 30 differently, as follows:

> **30.** Apparatus for programming an electrically alterable non-volatile memory cell having more than two predetermined memory states, comprising:
>
> a selecting device which selects one of a plurality of reference signals in accordance with information indicating a memory state to which said memory cell is to be programmed, [b] *each reference signal corresponding to a different memory state of said memory cell*;
>
> [c] *a programming signal source to apply a programming signal to said memory cell; and*
>
> [d] *a control device to control the application of said programming signal to said memory cell based on the selected reference signal.*

*Id*.

It is undisputed that in every version of MLC's infringement contentions (the 2014 initial contentions, the February 2019 proposed amended contentions, and the March 2019 amended contentions), MLC did not properly chart claim element 45(d). Instead, in all three versions of MLC's infringement contentions, MLC incorrectly charted claim element 42(d) in place of claim element 45(d), using the claim language from Claim 42. Claim 42 states,

> **42.** A method of programming an electrically alterable non-volatile memory cell having more than two predetermined memory states, said method comprising:
>
> selecting one of a plurality of reference signals in accordance with information indicating a memory state to which said memory cell is to be programmed, each reference signal corresponding to a different memory state of said memory cell;
>
> applying a programming signal to said memory cell;
>
> [d] *detecting a parameter indicating the state of said memory cell; and*
>
> *verifying whether said memory cell is programmed to the state indicated by said information based on the detected parameter and the selected reference signal.*

'571 Patent at Col. 16, Lines 23-37 (emphasis added). The italicized language is what the parties refer to as claim element 45(d).

Thus, MLC's infringement contentions state:

9

| Claim | '571 Patent Claim Language | Accused Product |
|---|---|---|
| 45(d) | detecting a parameter indicating the state of said memory cell; and verifying whether said memory cell is programmed to the state indicated by said information based on the detected parameter and the selected reference signal. | The Accused Product detects a parameter indicating the state of the memory cell and verifies whether the memory cell Is programmed to the state indicated by the information based on the detected parameter and the selected reference signal. In particular, the Accused Product compares a voltage of the memory cell to the verify reference voltage to test whether the cell has been properly programmed to the desired state. |

Dkt. No. 370-7 at 47 (Amended Infringement Contentions at 47). The charted evidence for claim element 45(d) is the same chart from page 19 of the TechInsights Report that MLC used throughout the infringement contentions for multiple claim elements, including claim element 1(d),[4] claim element 9(e), claim element 12(e), claim element 30(d)[5] and claim element 42(d). *See id.* at 8, 16, 24, 32, 40.

Micron notes that it put MLC on notice of its failure to properly chart claim element 45(d) in its December 3, 2018 First Supplemental Responses to MLC's First Set of Interrogatories:

> In addition, MLC's Infringement Contentions do not provide any contention with regard to the limitation "applying a programming signal to said memory cell; and controlling the application of said programming signal to said memory cell based on the selected reference signal" such that Micron has not received any contention that would receive a response.

Dkt. No. 306-24 (First Supplemental Responses at 9). Notwithstanding this notice, MLC did not correct its error and repeated the "typo" in both 2019 versions of the amended infringement contentions.

MLC responds that its infringement contentions contained a "trivial" "scrivener's error,"

---

[4] This is the same chart that MLC relies on to argue that it properly disclosed that the comparator includes the memory cell. *See* Micron's Opp'n at 13 (Dkt. No. 390).

[5] As noted *supra*, while MLC's infringement contentions refer to claim element 30(d), Dr. Lee's report refers to the same element as claim element 30(c), and there is no "claim element 30(d)" in Dr. Lee's Report. *Compare* Dkt. No. 370-7 at 31 (Amended Infringement Contentions at 31), *with* Dkt. No. 370-8 at 96 (Lee Report ¶ 184).

and that the claim charts identified the correct claim element – claim element 45(d) – and the correct evidence (the chart on page 19 of the TechInsights Report). MLC argues that "any reasonably competent patent attorney would grasp the scope of the allegations, realize it was a typographical error, and have prepared its defense." Dkt. No. 390 at 17 (MLC's Opp'n).

The Court concludes that MLC has improperly disclosed a new theory for claim element 45(d) through Dr. Lee's report and thus GRANTS this aspect of Micron's motion. MLC essentially argues that it implicitly disclosed its claim 45(d) theory – namely, that claim 45(d) is infringed for the same reasons identified by Dr. Lee with regard to claim elements 30(b) and 30(c) – because its infringement contentions for element 45(d) charted the same evidence for the no-longer extant claim element 30(d). However, the onus is not on Micron to "grasp" the scope of MLC's claim 45(d) theory by piecing together bits of different contentions from claims 30, 42 and 45, deciding on its own what is or is not a "scrivener's error," and then figure out how the various contentions align (or not) with Dr. Lee's report.

Further, the Court would have more sympathy for MLC's argument if the evidence charted for element 45(d) – the chart from page 19 of the TechInsights Report – was unique to claims 45 and 30. Instead, that exact chart was repeatedly cited throughout MLC's infringement contentions for numerous other claim elements, and thus a person reading MLC's infringement contentions for claim 45 would have no basis to believe that MLC's claim element 45(d) theory was the same or similar to its claim 30(b) and 30(c) theory (or its previous claim 30(d) theory). As discussed *supra*, "[i]mplicit disclosures are contrary to the purpose of the local patent rules, which require parties to 'disclose the basis for their contentions' in order to 'make them *explicit* and streamline patent litigation.'" *KlausTech, Inc*., 2018 WL 5109383, at *4.

11

1    For the reasons set forth above, the Court GRANTS Micron's motion to strike the portions
2 of Dr. Lee's report which state that the comparator includes the memory cell as well as Paragraph
3 212, and DENIES the balance of the motion.

**IT IS SO ORDERED**.

Dated: April 25, 2019

_____
SUSAN ILLSTON
United States District Judge