UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MLC INTELLECTUAL PROPERTY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC.,<br><br>Defendant. | Case No. 14-cv-03657-SI<br><br>**ORDER RE: MICRON'S DAMAGES MOTIONS IN LIMINE #2, #3 AND #5**<br><br>Re: Dkt. Nos. 445, 447, 451 |

On June 6, 2019, the Court held a hearing on various pretrial motions. For the reasons set forth below, the Court GRANTS Micron's damages motions in limine # 2 and # 3 and DENIES Micron's damages motion in limine #5 without prejudice to specific objections at the time of trial.

**I.   Micron's Damages MIL #2[1]**

Micron seeks "to preclude MLC from proffering any testimony, evidence, argument, or insinuation regarding the non-party subsidiaries and affiliates, their extraterritorial sales, or to contest Micron's determination of what constitutes a foreign sale." MIL #2 at 1 (Dkt. No. 445). Based upon the expert report of MLC's damages expert, Mr. Milani, it is clear that MLC seeks damages based on a royalty base that includes all of Micron's worldwide sales and that includes all sales, domestic and foreign, by eight of Micron's wholly-owned subsidiaries as well as IMFT, a joint venture between Micron and Intel. Micron asserts that MLC may not seek damages based on Micron's foreign sales, and that MLC may not seek damages based on *any* sales by Micron's

---

[1] The Court rejects MLC's assertion that MIL #2 is a disguised and therefore procedurally improper summary judgment motion, as the motion does not seek dismissal of any pending claims in the lawsuit, but rather seeks to preclude MLC from presenting evidence at trial that is outside the scope of MLC's claims.

subsidiaries and IMFT.

The Court agrees with Micron. As an initial matter, MLC never alleged or disclosed in discovery that it was seeking to hold Micron liable for foreign sales or the sales by its subsidiaries and joint ventures. Instead, the question of non-party and foreign sales was first presented as discovery dispute when MLC sought discovery on Micron's sales. As the record reflects, discovery regarding Micron's sales was complicated and protracted. In an order filed November 26, 2018, the Court ultimately allowed discovery on Micron's worldwide sales (as well as non-party sales) because, *inter alia*, MLC asserted that wanted to challenge as a factual matter whether sales were properly characterized as "foreign" or "domestic" and because the Court recognized that the law regarding the relevance of foreign sales was somewhat in flux. In addition, the Court directed Micron to produce sales data for subsidiaries and the joint venture because MLC asserted that Micron's production of sales data was incomplete in numerous respects and because such discovery might be relevant to one of Micron's affirmative defenses.[2] However, when the Court allowed such discovery the Court expressly reserved the questions of whether Micron would be liable for foreign and non-party sales. *See generally* Dkt. No. 240. The Court's order also noted that on November 13, 2018, MLC had filed a motion to amend the complaint to add 9 new parties, which were the subsidiaries and joint venture, and that motion was then pending. The Court subsequently denied MLC's motion to amend the complaint, finding that "[a]dding nine new defendants to this already complex case would inject additional layers of complexity to this litigation," and require the reopening of fact discovery and the setting of an entirely new pretrial schedule. *See generally* Dkt. No. 288.

Now that all discovery has closed and this case is approaching trial, the Court concludes that MLC has not demonstrated a legal or factual basis for seeking to hold Micron liable for non-party sales or foreign sales. As discussed *supra*, MLC never alleged or disclosed in discovery that it is entitled to damages based on Micron's vicarious liability for the non-parties. Further, based upon

---

[2] MLC had also asserted, in the context of the discovery dispute, that Micron "benefitted" from the sales made by subsidiaries, and that there was some unspecified legal basis to hold Micron liable for those sales.

2

the briefing and the arguments of counsel, the Court concludes that as a factual matter MLC does not have evidence to raise a triable issue regarding vicarious liability. In order to hold Micron liable for the sales of non-parties, MLC needs to pierce the corporate veil by showing, *inter alia*, "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotation marks and citation omitted). MLC's evidence of alter ego largely consists of Micron's SEC filings in which Micron reports consolidated financials and states, *inter alia*, that it guarantees certain debts of its subsidiaries.[3] The Court finds that as a matter of law that this evidence, on its own, is insufficient to raise a triable issue of fact as to alter ego, and thus GRANTS Micron's motion to exclude evidence of any sales by Micron's subsidiaries and IMFT. The Court also finds that the case law upon which MLC relies for the assertion that "whether Micron is directing and/or controls its foreign subsidiaries in their infringing activities" (MLC's Opp'n at 10; Dkt. No. 496) is inapposite. *See Sound View Innovations, LLC v. Hulu, LLC*, Case No. LA CV 17-04146 JAK (PLAx), Dkt. No. 452 at 12-13 (Redacted Summary Judgment Order) (C.D. Cal. Apr. 30, 2019) (unreported) (denying summary judgment on plaintiff's claim of divided infringement, where plaintiff alleged that defendant performed certain steps of claimed method and that defendant directed and controlled third parties to perform remaining steps of the claimed method); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1351 (Fed. Cir. 2018) (addressing divided infringement theory).

As to Micron's foreign sales, Micron states that it characterized as "foreign" those sales in which the sale, shipment and manufacture of the accused products *all* occurred outside of the United States. MLC argues that it may seek damages based on those entirely foreign sales based on *Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc., et al.*, No. CV 04-1371-LPS, 2018 WL 4804685 (D. Del. Oct. 4, 2018). In that case, Judge Stark held that the Supreme Court's decision in *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018) ("*WesternGeco II*"), implicitly overruled the Federal Circuit's decision in *Power Integrations Inc. v. Fairchild Semiconductor Int'l*

---

[3] It does not appear that MLC conducted any other discovery relevant to vicarious liability which is not surprising since MLC never alleged or disclosed such a theory.

*Inc. et al.*, 711 F.3d 1348 (Fed. Cir. 2013) ("*Power Integrations I*"), and thus that Power Integrations could seek recovery of worldwide damages for direct infringement under 35 U.S.C. § 271(a).[4] In *WesternGeco II*, the Supreme Court reversed the Federal Circuit and held that a plaintiff seeking lost profits damages under 35 U.S.C. § 271(f)(2)[5] may seek worldwide damages. Judge Stark reasoned that "[t]he Supreme Court's analysis of the patent damages statute, § 284, has equal applicability to the direct infringement allegations pending here, as governed by § 271(a), as it did to the supplying a component infringement claims at issue in *WesternGeco II*, which were governed by § 271(f)(2)." *Power Integrations, Inc.*, 2018 WL 4804685, at *1. However, recognizing that "the Federal Circuit could well disagree with this Court's assessment that the Supreme Court in *WesternGeco II* implicitly overruled the Federal Circuit's *Power Integrations* decision," Judge Stark certified his decision for interlocutory appeal, *id*. at *2, and that appeal is still pending before the Federal Circuit.

Micron argues that MLC's reliance on Judge Stark's opinion is misplaced for a number of reasons, and it disagrees that *WesternGeco II* implicitly overruled *Power Integrations I*. Micron argues that the Supreme Court's analysis of damages under § 271(f) in *WesternGeco II* is not transferable to the availability of damages under § 271(a) because § 271(f) involves some foreign conduct (the combining of components in an infringing manner outside the United States), whereas § 271(a) involves domestic acts of infringement. Micron also notes that MLC is seeking damages based on a reasonable royalty, not lost profits (as is the case in *Power Integrations* and *WesternGeco*), and that in any event, Judge Stark's opinion conflicts with controlling Federal Circuit

---

[4] 35 U.S.C. § 271(a) provides: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

[5] 35 U.S.C. § 271(f)(2) provides:

"(2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer."

4

and Supreme Court cases holding that the relevant patent laws do not provide "compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." *Power Integrations I*, 711 F.3d at 1371 (citing *Brown v. Duchesne*, 60 U.S. 183, 195 (1856) ("And the use of it outside of the jurisdiction of the United States is not an infringement of his rights, and he has no claim to any compensation for the profit or advantage the party may derive from it.")).

The Court concludes that under *Power Integrations I* and the cases cited therein, MLC may not seek damages based on Micron's wholly foreign sales. The Court also finds it significant that the Supreme Court denied certiorari in *Power Integrations I*. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*, 571 U.S. 1125 (2014). Whether Judge Stark is correct that *WesternGeco II* implicitly overruled *Power Integrations I* remains to be seen, but at this time controlling law holds that MLC may not seek damages under § 271(a) based on Micron's wholly foreign sales. *See also Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1306 (Fed. Cir. 2015) ("[W]e think that § 271(a) provides the basis for drawing the needed line. It states a clear definition of what conduct Congress intended to reach—making or using or selling in the United States or importing into the United States, even if one or more of those activities also occur abroad. Where a physical product is being employed to measure damages for the infringing use of patented methods, we conclude, territoriality is satisfied when and only when any one of those domestic actions for that unit (e.g., sale) is proved to be present, even if others of the listed activities for that unit (e.g., making, using) take place abroad.") (internal footnote omitted).

At the hearing, MLC's counsel provided conflicting answers regarding whether MLC contested, as a factual matter, whether any of Micron's "foreign" sales were in fact domestic sales that were recoverable. However, both at the hearing and its opposition brief, MLC attempted to shift the burden of proof to Micron, asserting that "Micron has opted to produce sales data with insufficient detail to readily ascertain what is truly a foreign sale versus a domestic sale, much less sufficiently detailed to be dispositive on the issue of the nexus." MLC's Opp'n at 12 (Dkt. No 496). Based upon the arguments of counsel and the briefing on this motion, it appears that MLC does not have any evidence to contest Micron's classification of foreign sales as foreign. Micron's counsel stated at the hearing that Micron classified sales as "foreign" when the sale, shipment and

5

manufacture of the product *all* occurred overseas. As MLC has the burden of proof to show that that the damages it seeks are legally compensable, and because MLC has not identified any evidence to challenge Micron's categorization of certain sales as "foreign," the Court GRANTS Micron's motion in limine to exclude evidence of foreign sales.[6]

## II. Micron's MIL #3

Micron seeks to preclude MLC's witnesses from referring to Micron as "the last/lone holdout," "an invention plagiarist," and/or a "dirty rotten infringer." This motion is GRANTED as framed. If relevant,[7] MLC may present evidence regarding the other licenses that BTG/MLC entered into with other NAND flash manufacturers. However, the Court agrees that referring to Micron as "the last/lone holdout" is prejudicial. The Court also finds that the terms "invention plagiarist" and "dirty rotten infringer" are prejudicial. The Court will issue a separate order regarding Ronald Epstein and whether he is permitted to testify as an expert regarding his real world licensing model in which he coined the term "invention plagiarist."

## III. Micron's MIL #5

Micron seeks to preclude testimony outside the scope of Mr. Milani's and Mr. Epstein's expert reports. As a general matter, experts are limited to providing testimony that has been disclosed in their reports. In addition, the Court will issue separate orders regarding the *Daubert*

---

[6] At the hearing, MLC's counsel cited the *Carnegie-Mellon* case for the proposition that a product that was designed in the United States and manufactured elsewhere would be a domestic sale. In that case, the Federal Circuit vacated a portion of a damages award and remanded for a new trial to determine whether certain computer chips were sold in the United States. The court expressly declined to resolve the question of whether the sales at issue were domestic or foreign, and finding that further factual development at the district court was needed. The court also left open the question of whether "design" activities in the United States would be sufficient to make a sale domestic. *See Carnegie-Mellon*, 807 F.3d at 1308-09 ("[W]e do not have a full understanding of, among other things, what a 'design win' meant legally and practically, how such a 'design win' in the United States in this case compares with the activities that occurred in the United States in *Halo* (which were insufficient), and where specific chip orders were negotiated and made final. Until fuller exploration of factual and legal issues occurs on remand, it is premature to rule on whether sales occurred in the United States for the chips at issue.").

[7] A number of the pending motions relate to whether MLC may present evidence regarding the other licenses for purposes of computing damages in this case.

6

motions related to Mr. Milani and Mr. Epstein, as well as related motions in limine and/or to strike. The Court DENIES this motion without prejudice to specific objections at the time of trial.

**IT IS SO ORDERED**.

Dated: June 11, 2019

SUSAN ILLSTON
United States District Judge